OPINION
{¶ 1} Appellants, Ashtabula Area City School Board of Education ("the school board") and Dr. William Licate ("Licate"), appeal the judgment entered by the Ashtabula County Court of Common Pleas. The trial court denied appellants' motion for summary judgment. *Page 2 
 {¶ 2} During the 2002-2003 and 2003-2004 school years, appellee, Timothy Fleming, was employed by the school board as a substitute teacher. Fleming is an African-American male. During the summer of 2004, Fleming was informed that his substitute teaching position would not be renewed for the 2004-2005 school year. In July 2004, Fleming attended a school board meeting. Upon the invitation of the school board, Fleming also attended the executive session portion of the school board meeting, where the decision not to renew his contract was discussed. Thereafter, the school board moved into the public portion of its meeting. During the public portion of the meeting, Fleming engaged in a "protest," contesting the school board's decision not to renew his teaching contract. Fleming complained about the lack of minority representation in the pool of employees of the school district. He called Licate, the Superintendent of the school district, a "liar." In addition, he "appointed" himself a member of the school board and took a seat with the board members at the front of the room. Eventually, the police were called in order to get Fleming to stop his protest. After the police arrived, Fleming took a seat with the rest of the members of the public. Fleming was not arrested.
 {¶ 3} Following the meeting, Licate made certain comments about Fleming during an interview with a local radio station. The following colloquy occurred during the interview:
 {¶ 4} "Dr. Licate: Well, I think we have less than two percent minority employees. We've tried to hire them, but what would a minority, what is in Ashtabula for a minority? I mean, for social life, where do they go, what will they do? And we just can't get them to come here. And we're getting very few home grown teachers. *Page 3 
 {¶ 5} "Radio Host: There is a lot of out-of-town, out of the area teachers coming in, then?
 {¶ 6} "Dr. Licate: Well, by home grown, I mean home grown minority teachers who are fully certified and want to teach in the school district. They're just not here.
 {¶ 7} "Radio Host: And why was he cut from, I guess, the substitute list then, Dr. Licate?
 {¶ 8} "Dr. Licate: Well, I can't comment. That's a personnel issue. He can talk all he wants at a public school board meeting, but I will not comment on personnel.
 {¶ 9} "Radio Host: Can you comment on the fact that he may be able to have a job here later on down the road, possibly?
 {¶ 10} "Dr. Licate: Well after his public outburst, I would find it very difficult personally to see that happen. I mean, would you want your kids being taught by him?"
 {¶ 11} In 2005, Fleming initiated the instant lawsuit against appellants, claiming (1) appellants' decision was motivated by racial discrimination; (2) Fleming was treated differently than similarly situated Caucasian teachers; (3) appellants engaged in systematic discrimination against African-Americans; (4) appellants violated Ohio's public policy against racial discrimination; (5) appellants unconstitutionally deprived Fleming of a vested property interest; (6) Dr. Licate's comments were defamatory; (7) intentional infliction of emotional distress; and (8) breach of contract.
 {¶ 12} Appellants filed a motion for summary judgment. In regard to Fleming's claims of defamation and intentional infliction of emotional distress, part of appellants' argument is that they are immune from liability under Chapter 2744 of the Revised Code. Fleming filed a brief in opposition to appellants' motion for summary judgment. The trial court denied appellants' motion for summary judgment. *Page 4 
 {¶ 13} Appellants have appealed from the judgment entry of the trial court denying their motion for summary judgment.
 {¶ 14} Prior to addressing the merits of appellants' assigned errors, we will first address whether the trial court's judgment entry is a final, appealable order. Appellants claim the trial court's judgment entry is a final, appealable order as it relates to Fleming's sixth and seventh causes of action, because they argued they were immune from liability on these claims. Appellants' immunity defense only applied to the sixth and seventh causes of action. Appellants' appeal is limited to the trial court's determination in relation to those causes of action.
 {¶ 15} The trial court's judgment entry found that there were genuine issues of material fact to be litigated. While the entry did not specifically address the issue of immunity, we will presume the trial court considered appellants' argument and its finding that there are genuine issues of material fact to be litigated is equally applicable to the issue of whether immunity should apply. Appellants argue this matter is a final, appealable order pursuant to R.C. 2744.02(C), which provides:
 {¶ 16} "An order that denies a political subdivision or an employee of a political subdivision the benefit of an alleged immunity from liability as provided in this chapter or any other provision of the law is a final order."
 {¶ 17} The Supreme Court of Ohio has recently addressed this issue, holding "[w]hen a trial court denies a motion in which a political subdivision or its employee seeks immunity under R.C. Chapter 2744, that order denies the benefit of an alleged immunity and is therefore a final, appealable order pursuant to R.C. 2744.02(C)." Hubbell v.Xenia, 115 Ohio St.3d 77, 2007-Ohio-4839, syllabus. Thus, the trial court's judgment entry in this matter was a final, appealable order. *Page 5 
 {¶ 18} Appellants raise two assignments of error on appeal. Their first assignment of error is:
 {¶ 19} "[1.] The trial court erred in denying summary judgment to the board on plaintiff-appellee's sixth and seventh causes of action."
 {¶ 20} Pursuant to Civ.R. 56(C), summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Dresher v. Burt (1996),75 Ohio St.3d 280, 293. In addition, it must appear from the evidence and stipulations that reasonable minds can come to only one conclusion, which is adverse to the nonmoving party. Civ.R. 56(C). The standard of review for the granting of a motion for summary judgment is de novo.Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105.
 {¶ 21} "Since summary judgment denies the party his or her `day in court' it is not to be viewed lightly as docket control or as a `little trial.' The jurisprudence of summary judgment standards has placed burdens on both the moving and the nonmoving party. In Dresher v.Burt, the Supreme Court of Ohio held that the moving party seeking summary judgment bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record before the trial court that demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim. The evidence must be in the record or the motion cannot succeed. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case but must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) that affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial *Page 6 
burden, the motion for summary judgment must be denied. If the moving party has satisfied its initial burden, the nonmoving party has a reciprocal burden outlined in the last sentence of Civ.R. 56(E) to set forth specific facts showing there is a genuine issue for trial. If the nonmoving party fails to do so, summary judgment, if appropriate shall be entered against the nonmoving party based on the principles that have been firmly established in Ohio for quite some time in Misteff v.Wheeler (1988), 38 Ohio St.3d 112.
 {¶ 22} "* * *
 {¶ 23} "The Supreme Court in Dresher went on to hold that whenneither the moving nor nonmoving party provides evidentiary materials demonstrating that there are no material facts in dispute, the moving party is not entitled to a judgment as a matter of law as the moving party bears the initial responsibility of informing the trial court of the basis for the motion, `and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim.' [Dresher v. Burt,75 Ohio St.3d at 276.]" Welch v. Ziccarelli, 11th Dist. No. 2006-L-229,2007-Ohio-4374, at ¶ 40-42. (Emphasis in original.)
 {¶ 24} Appellants argue that the school board is entitled to immunity under R.C. 2744.02. This statute provides immunity for certain actions of political subdivisions. Dennis v. Coventry Local School Dist. Bd. ofEdn., 9th Dist. No. 22913, 2006-Ohio-2847, at ¶ 25, citing Cianciola v.Fairlawn, 156 Ohio App.3d 16, 2004-Ohio-327, at ¶ 13. There are enumerated exceptions to this governmental immunity, which are contained in R.C. 2744.02. Id. Appellants assert that none of the exceptions to immunity contained in that statute apply to this matter and, as a result, the school board has immunity. Fleming does not argue that any of the exceptions contained in R.C. 2744.02 *Page 7 
apply. Instead, Fleming argues that R.C. 2744.02 does not apply to this matter, due to the language in R.C. 2744.09, which provides, in pertinent part:
 {¶ 25} "This chapter does not apply to, and shall not be construed to apply to, the following:
 {¶ 26} "* * *
 {¶ 27} "(B) Civil actions by an employee, or the collective bargaining representative of an employee, against his political subdivision relative to any matter that arises out of the employment relationship between the employee and the political subdivision[.]"
 {¶ 28} Thus, if the provisions in R.C. 2744.09(B) apply, then R.C. 2744, including the immunity provisions in R.C. 2744.02, does not apply to this matter. There are two questions relevant to the instant matter. First, was Fleming an employee for the purposes of R.C. 2744.09(B)? And second, did the alleged torts arise out of the employment relationship between Fleming and the school board?
 {¶ 29} Appellants argue Fleming's contract ended in May 2004. Thus, appellants claim that Fleming was not an employee in July 2004, when the alleged torts were committed. Further, they note that he was not an employee when the suit was filed.
 {¶ 30} We note R.C. 2744.09 does not specifically address at what point the employee must have been employed by the political subdivision. There are three possible interpretations of R.C. 2744.09(B), which are: (1) that the employee must have been currently employed at the time the tort occurred and at the time the lawsuit was filed; (2) that the employee must have been currently employed only at the time the tort occurred; or (3) that the individual was employed at some time and the alleged tort "arose out of the employment relationship." This final interpretation would not provide *Page 8 
immunity to a political subdivision from lawsuits from a former employee under certain circumstances.
 {¶ 31} We immediately reject the notion that the employee must have been currently employed at the time the tort occurred and the time thelawsuit was filed. To hold otherwise would encourage employers to terminate employees to avoid potential liability when an incident has occurred.
 {¶ 32} In this matter, it is undisputed that Fleming was an employee of the school board for the 2003-2004 school year. Fleming's contract was not renewed. Upon learning that his contract was not going to be renewed, Fleming contacted various individuals about the reason his contract was not renewed.
 {¶ 33} Fleming was invited to attend the July 2004 school board meeting. In his deposition, Licate stated that Fleming "requested a meeting in executive session with the Board of Education." Licate indicated that other employees had requested to meet with the school board during executive session to discuss personnel issues. Fleming stated in his deposition that he called a school board member named Charlie Hauff, and Hauff told him that a meeting would be set up and the school board would explain to Fleming why he was terminated. The only purpose of this meeting was to discuss a matter that had arisen relating to Fleming's employment. Presumably, if Fleming convinced the school board that his non-renewal was inappropriate, the school board had the authority to reverse the decision.
 {¶ 34} Even if it is determined that Fleming was not a "current" employee in July 2004, the provisions in R.C. 2744.09(B) could still apply to this matter. Appellants argue that the statute must be read to only apply to current employees. We reject appellants' strict reading of the statute. Otherwise, a former employee would never have a remedy *Page 9 
for allegedly defamatory comments made after his or her employment ended. For example, an employer could make false statements pertaining to a former employee's job performance, and that individual would have no recourse against the employer. We believe the legislature intended the term "employee" to cover former employees in certain circumstances. The language of the statute expressly connects the terms "employee" and "arises out of the employment relationship." Obviously, therefore, the statute only applies to former employees if the alleged tortious conduct arises out of the employment relationship. Appellants are requesting an interpretation that affords an exception to the immunity only if the conduct occurred while the employee was technically employed. If the legislature intended the statute to be as narrow as appellants suggest, it would have been quite simple to limit the application of the statute by stating just that. However, it seems clear that "relative toany matter that arises out of the employment relationship" is intended to encompass much more than appellants propose. (Emphasis added.)
 {¶ 35} Next, we will address whether there is sufficient evidence in the record which, if believed, establishes that the alleged torts arose out of the employment relationship. The comments at issue were made by Licate, who was the superintendent of the school district and Fleming's supervisor. They occurred following an eventful school board meeting. One of the topics at the school board meeting was the school board's decision not to renew Fleming's teaching contract. Finally, Licate's comments specifically referenced Fleming's future teaching prospects with the district and Fleming's competency to adequately teach children.
 {¶ 36} There is clearly a genuine issue of material fact as to whether the events at the school board meeting "arose out of the employment relationship." *Page 10 
 {¶ 37} Appellants note that Fleming's sixth and seventh causes of action allege intentional torts. Several courts, including the Eighth Appellate District, have held that:
 {¶ 38} "`An employer's intentional tort against an employee does not arise out of the employment relationship, but occurs outside the scope of employment. Brady v. Safety-Kleen Corp. (1991), 61 Ohio St.3d 624,576 N.E.2d 722, paragraph one of the syllabus.'" Chase v. Brooklyn CitySchool Dist. (2001), 141 Ohio App.3d 9, 19, quoting Ventura v.Independence (May 7, 1998), 8th Dist. No. 72526, 1998 Ohio App. LEXIS 2093, at *22. (Secondary citations omitted.) This court has also applied the Brady holding to an immunity case under R.C. 2744.09. Sabulsky v.Trumbull Cty., Ohio, 11th Dist. No. 2001-T-0084, 2002-Ohio-7275, at ¶ 18.
 {¶ 39} In Brady v. Safety-Kleen Corp., a truck driver sought damages for an intentional tort allegedly committed by his employer. Brady v.Safety-Kleen Corp., 61 Ohio St.3d at 625. The Supreme Court of Ohio held that intentional torts necessarily occur outside of the employment relationship; therefore, such actions were not subject to the Workers' Compensation Act. Id. at 635. It is important to note that the effect of the Brady holding was to permit common-law, intentional-tort lawsuits by employees, in that such lawsuits were not preempted by the Workers' Compensation Act. Id.
 {¶ 40} Fleming notes there are several cases that cite to R.C.2744.09(B) and hold that employers do not receive immunity from intentional tort actions brought against political subdivision employees if the alleged torts arose out of the employees' employment relationship. See Patrolman "X" v. Toledo (1999), 132 Ohio App.3d 374,396-397; Davis v. Cleveland, 8th Dist. No. 83665, 2004-Ohio-6621, at ¶ 34; and Marcum v. Rice (July 20, 1999), 10th Dist. No. 98AP-717, 98AP-717, 98AP-718, 98AP-719, 98AP-721, 1999 Ohio App. LEXIS 3365, at *16-22. *Page 11 
 {¶ 41} In many instances, the Brady holding is readily applicable to an immunity case under R.C. 2744.09(B). For example, if a political subdivision employee initiates a lawsuit for battery against his or her employer alleging that a supervisor inappropriately touched him or her, such conduct would clearly be outside of the employment relationship. This is because once the supervisor made the decision to engage in the inappropriate behavior, he was acting independently from the interests of the employer and was no longer acting in the course and scope of his employment. However, we do not believe that the Brady holding acts as a per se bar to any intentional tort claim by a political subdivision employee against his or her employer. If the conduct forming the basis of the intentional tort arose out of the employment relationship, the employer does not have the benefit of immunity pursuant to the plain language of R.C. 2744.09(B). This is especially true in a case like the one sub judice, where the employer admits that the alleged conduct occurred during the course and scope of the alleged tortfeasor's employment.
 {¶ 42} The undisputed evidence in this case indicates that Licate's comments were made during the course and scope of his employment. The fourth allegation of Fleming's complaint is, "[a]t all times relevant, Defendant Licate was acting within the course and scope of his employment with Co-Defendant School Board." In their answer to the complaint, appellants admitted "the allegations contained in Paragraph 4 of Plaintiffs Complaint." An admission in an answer satisfies the plaintiffs burden of proof on that issue. (Citation omitted.) See, e.g.,Kraus v. Hanna, 11th Dist. No. 2002-P-0093, 2004-Ohio-3928, at ¶ 48. Thus, as stated in appellants' brief, "Licate was acting in the course and scope of his employment at all relevant times on June 14, 2004." *Page 12 
 {¶ 43} Clearly, appellants are not admitting that Licate committed the intentional torts. However, they did admit that "at all relevanttimes" Licate was acting in the course and scope of his employment. (Emphasis added.) Thus, if a trier of fact determines that Licate's comments did constitute the intentional torts alleged by Fleming, those torts, by agreement of the parties, occurred during the course and scope of Licate's employment. Accordingly, in this matter, those torts could have arisen out of the employment relationship.
 {¶ 44} Appellants' first assignment of error is without merit.
 {¶ 45} Appellants' second assignment of error is:
 {¶ 46} "[2.] The trial court erred in denying Licate's motion for summary judgment on plaintiff-appellee's sixth and seventh causes of action."
 {¶ 47} Appellants argue that Licate is immune from the intentional torts advanced by Fleming. R.C. 2744.03 provides immunity to employees of political subdivisions. See Thorp v. Strigari, 155 Ohio App.3d 245,2003-Ohio-5954, at ¶ 31. There are exceptions to the general grant of immunity for political subdivision employees, which are contained in R.C. 2744.03(A)(6). Id. That section provides:
 {¶ 48} "(A)(6) In addition to any immunity or defense referred to in division (A)(7) of this section and in circumstances not covered by that division or sections 3314.07 and 3746.24 of the Revised Code, the employee is immune from liability unless one of the following applies:
 {¶ 49} "(a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;
 {¶ 50} "(b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; *Page 13 
 {¶ 51} "(c) Civil liability is expressly imposed upon the employee by a section of the Revised Code. Civil liability shall not be construed to exist under another section of the Revised Code merely because that section imposes a responsibility or mandatory duty upon an employee, because that section provides for a criminal penalty, because of a general authorization in that section that an employee may sue and be sued, or because the section uses the term `shall' in a provision pertaining to an employee."
 {¶ 52} R.C. 2744.03(A)(6)(a) does not apply to this matter. There is no dispute that Licate was acting within the course and scope of his employment when he made the comments. As we noted in our analysis of appellants' first assignment of error, this fact was alleged in Fleming's complaint and admitted in appellants' answer.
 {¶ 53} In addition, R.C. 2744.03(A)(6)(c) does not apply to this case. Fleming does not assert that there are any sections of the Revised Code that expressly impose liability upon Licate.
 {¶ 54} However, we note there is sufficient evidentiary material to create a factual issue as to whether R.C. 2744.03(A)(6)(b) conduct occurred.
 {¶ 55} The First Appellate District has defined "malice," in the context of R.C. 2744.09(A)(6), as "`the willful and intentional design to do injury or the intention or desire to harm another, usually seriously, through conduct which is unlawful or unjustified.'"Norwell v. Cincinnati (1999), 133 Ohio App.3d 790, 813. (Citations omitted.)
 {¶ 56} The First District described "bad faith" as "conduct that involves `a dishonest purpose, conscious wrongdoing, the breach of a known duty through some ulterior motive or ill-will partaking of the nature of fraud, or an actual intent to mislead or deceive another.'"Norwell v. Cincinnati, 133 Ohio App.3d at 813. (Citations omitted.) *Page 14 
 {¶ 57} In another case addressing R.C. 2744.09(A)(6)(b), this court has held that the same legal standard applies when determining whether the alleged tortfeasor "acted in a `wanton and willful' manner and whether he acted in a `wanton or reckless manner.'" Ferrell v. WindhamTwp. Police Dept. (Mar. 27, 1998), 11th Dist. No. 97-P-0035, 1998 Ohio App. LEXIS 1269, at *13. This conclusion was based on the Supreme Court of Ohio's equation of the "standard for reckless conduct with that of wanton and willful misconduct." Id. citing Thompson v. McNeill (1990),53 Ohio St.3d 102, 104, fn. 1.
 {¶ 58} "`"Wanton misconduct" comprehends an entire absence of all care for the safety of others and an indifference to consequences. * * * It implies a failure to exercise any care toward those whom a duty of care is owing when the probability that harm will result from such failure is great, and such probability is known to the actor. It is not necessary that an injury be intended or that there by any ill will on the part of the actor toward the person injured as a result of such conduct. * * * Wanton misconduct is positive in nature while mere negligence is naturally negative in character.'" Peoples v. Willoughby (1990),70 Ohio App.3d 848, 851, quoting Tighe v. Diamond (1948), 149 Ohio St. 520,526-527.
 {¶ 59} The Fifth Appellate District has applied the above definition of wanton misconduct to a case involving immunity under R.C.2744.03(A)(6)(b). Cutts v. Canton (July 6, 1998), 5th Dist. No. 1997CA00405, 1998 Ohio App. LEXIS 3572, at *13.
 {¶ 60} Licate made comments about Fleming following the school board meeting. Specifically, Licate stated, "[w]ell after [Fleming's] public outburst, I would find it very difficult personally to see that [he would be offered another opportunity to work for the school district]. I mean, would you want your kids being taught by him?" We note these *Page 15 
comments were made following an eventful school board meeting, where voices were raised, where Fleming called Licate a liar, and where the police were called to restore order. In light of these circumstances, we believe it is possible for a trier of fact to conclude that Licate made these comments in retaliation for Fleming's behavior at the school board meeting and in response to Fleming's personal attacks on Licate. Finally, Licate admitted that his comments about Fleming would have a detrimental effect on Fleming's subsequent employment search.
 {¶ 61} We note that this matter is still at the summary judgment stage, and there has not even been a factual determination as to whether Licate's comments were tortious in nature. The only issue before this court at this time is whether, as a matter of law, Licate is entitled to the statutory immunity provided in R.C. 2744.03. There is a genuine issue of material fact as to whether R.C. 2744.03(A)(6)(b) conduct occurred. This is because, for the purposes of summary judgment, Fleming, as the nonmoving party, is entitled to have all the evidence construed most strongly in his favor. Civ.R. 56(C). When this is done, a reasonable person could conclude that Licate's comments were made "with malicious purpose, in bad faith, or in a wanton or reckless manner." See, e.g., Civ.R. 56(C).
 {¶ 62} Appellants' second assignment of error is without merit.
 {¶ 63} The judgment of the trial court is affirmed.
MARY JANE TRAPP, J., concurs,
 DIANE V. GRENDELL, P.J, dissents with a Dissenting Opinion. *Page 16