MELODY J. STEWART, J., CONCURRING IN PART AND DISSENTING IN PART:
 

 {¶ 29} I agree with the part of the majority opinion finding that we lack jurisdiction to address the county's statute of limitations argument. I disagree, however, with the majority's resolution of Piazza's false light invasion of privacy claim.
 

 {¶ 30} R.C. 2744.09(B) creates an exception to political subdivision immunity for civil actions "by an employee * * * arising
 out of the employment relationship between the employee and the political subdivision." The plain meaning of the word "employee" is a person hired by, and working for, a person or entity in return for wages. For example, in the context of workers' compensation law, "employment" means "service performed by an individual for remuneration under any contract of hire, written or oral, express or implied, * * *." R.C. 4141.01(B)(1). Applying that plain and ordinary meaning,
 
 Hewitt v. L.E. Myers Co.
 
 ,
 
 134 Ohio St.3d 199
 
 ,
 
 2012-Ohio-5317
 
 ,
 
 981 N.E.2d 795
 
 , ¶ 16, the use of the word "employee" in R.C. 2744.09(B) carves out an exception to immunity when an action is brought against a political subdivision employer by someone who works for the employer at the time a civil action is filed: if a person is not employed by the political subdivision, that person is not, by definition, an "employee."
 

 {¶ 31} The same statutory interpretation applies to the term "employment relationship." The Ohio Supreme Court has defined the "employment relationship" as "a contract of hire express or implied" with "hire" defined as "the price, reward or compensation paid for personal service of labor."
 
 Coviello v. Indus. Comm. of Ohio
 
 ,
 
 129 Ohio St. 589
 
 ,
 
 196 N.E. 661
 
 (1935), paragraphs three and four of the syllabus. There can be no "contract for hire" without "an obligation that the person denominated the employer pay the person employed."
 

 Id.
 

 at paragraph five of the syllabus. As written, R.C. 2744.09(B) applies only to claims filed by an "employee" and only to claims "arising out of the employment relationship between the employee and the political subdivision."
 

 {¶ 32} The majority relies on
 
 Fleming v. Ashtabula Area City School Bd. of Edn.
 
 , 11th Dist. Ashtabula No. 2006-A-0030,
 
 2008-Ohio-1892
 
 ,
 
 2008 WL 1777833
 
 , in which the Eleventh District Court of Appeals held that R.C. 2744.09(B) applies to matters arising from the employment relationship even after the employee has been terminated. The Eleventh District admitted that R.C. 2744.09(B), as written, could be interpreted to mean "that the employee must have been currently employed at the time the tort occurred and at the time the lawsuit was filed,"
 
 id.
 
 at ¶ 30, but rejected that interpretation stating that, "[i]f the legislature intended the statute to be as narrow as appellants suggest, it would have been quite simple to limit the application of the statute by stating just that."
 
 Id.
 
 at ¶ 34.
 

 {¶ 33} Respectfully, R.C. 2744.09(B) says precisely what the Eleventh District rejects. The statute not only uses the word "employee" (meaning one
 
 presently
 
 employed), but also uses the word in conjunction with the word "arises"-that the employee's claim "arises out of the employment relationship." Rules of statutory construction require us to apply " 'the rules of grammar and common usage.' "
 
 Stolz v. J & B Steel Erectors, Inc.
 
 ,
 
 146 Ohio St.3d 281
 
 ,
 
 2016-Ohio-1567
 
 ,
 
 55 N.E.3d 1082
 
 , ¶ 9, quoting R.C. 1.42. The word "arises" is present tense, so when used with the phrase "employment relationship," it indisputably means that the employee's claim had to occur as a result of a current employment relationship (there can be no employment "relationship" if the person is not employed). If R.C. 2744.09(B) was intended to mean what both the Eleventh District and the majority believe, it could have been written accordingly: civil actions by a former employee relative to any matter that arose out of the employment relationship. Or at a minimum, the statute could make clear that it creates an exception to immunity under both circumstances: civil actions by an employee, past or present, relative to any matter arising out of the employment relationship.
 

 {¶ 34} In any event, to the extent that it is possible to give R.C. 2744.09(B) different interpretations, we must give it the interpretation that is most consistent with the idea that under the Political Subdivision Tort Liability Act, immunity is the rule, not the exception. The Ohio Supreme Court has made it clear that exceptions and defenses to immunity listed in R.C. 2744.02(B) are "in derogation of a general grant of immunity, [so] they must be construed narrowly if the balances which have been struck by the state's policy choices are to be maintained."
 
 Doe v. Dayton City School Dist. Bd. of Edn.
 
 ,
 
 137 Ohio App.3d 166
 
 , 169,
 
 738 N.E.2d 390
 
 (2d Dist.1999).
 
 See also
 

 Wall v. Cincinnati
 
 ,
 
 150 Ohio St. 411
 
 ,
 
 83 N.E.2d 389
 
 (1948) (construing the phrase "open, in repair, and free from nuisance strictly, due to its being in derogation of common-law sovereign immunity);
 
 Wooster v. Arbenz
 
 ,
 
 116 Ohio St. 281
 
 , 283,
 
 156 N.E. 210
 
 (1927), paragraph three of the syllabus (finding that exceptions to political subdivision immunity "are in derogation of the common law and must therefore be strictly construed[.]"). These principles equally apply to the exceptions to immunity under R.C. 2744.09.
 

 {¶ 35} I am aware that in
 
 Sampson v. Cuyahoga Metro. Hous. Auth.
 
 ,
 
 131 Ohio St.3d 418
 
 ,
 
 2012-Ohio-570
 
 ,
 
 966 N.E.2d 247
 
 , where the court interpreted R.C. 2744.09(B) to hold that an intentional tort alleged against a political subdivision qualifies as matter arising out of the employment relationship within the meaning of R.C. 2744.09(B), the plaintiff was no longer employed by the Cleveland Metropolitan Housing Authority when he filed his action. Sampson's employment status at the time he filed suit would seem to suggest that a plaintiff need not be an employee of a political subdivision at the time he or she files an action for an intentional tort. However, Sampson's employment status at the time he filed his claim was neither raised nor addressed by the Supreme Court; the legal issue on appeal was whether an employer intentional tort, which had long been considered to be an act occurring outside of the employment relationship and thus not barred by the Workers' Compensation statutes,
 
 see
 

 Blankenship v. Cincinnati Milacron Chems., Inc.
 
 ,
 
 69 Ohio St.2d 608
 
 ,
 
 433 N.E.2d 572
 
 (1982), fell within the R.C. 2744.09(B) exception to immunity. Given the framing of that issue, the Supreme Court had no occasion to consider whether Sampson was barred from invoking the R.C. 2744.09(B) exception because he was not employed at the time he filed his claim.
 

 {¶ 36} But even if
 
 Sampson
 
 could be read to indicate that the Supreme Court was not reading R.C. 2744.09(B) to mean that a claimant must be an employee at the time the action against a political subdivision employer is filed, that interpretation would still leave Piazza outside of the exception. There is no dispute that at the time the statements at issue in this case were made, Piazza had been terminated. Once terminated, she no longer had an "employment relationship" with the county, so as a matter of law, the county executive's statements did not arise from an employment relationship.
 
 [1]
 
 To be sure, the statements were ones related to work or employment at the county agency. However, in R.C. 2744.09(B) the word "employment"
 

 specifically modifies the word "relationship" in a very specific way to indicate a relationship where a person performs services for remuneration under a contract of hire. As the statute is written, an act occurring after an employee no longer works for the employer cannot be said to "arise from the employment relationship between the employee and the political subdivision."
 

 {¶ 37} The Legislative Service Commission report
 
 [2]
 
 on R.C. 2744.09, 1985 HB 176, summarized the statute as liability provisions for political subdivisions "and their employees," noting that the immunity political subdivisions enjoyed under R.C. 2744.02 do not apply to civil actions "by an employee." Important is that R.C. 2744.09(B) does not refer to a "person" or "anyone" or even a "former employee" as those whose claims fall outside of political subdivision immunity. By using the word "employee" in the present tense, the statute references a current employment relationship where there would be an exception to immunity only for employees with actions against the political subdivision employer that arise out of the employment relationship between the two.
 

 {¶ 38} The construction that the majority and the
 
 Fleming
 
 case give to the statute could also lead to unintended results. Because the false light cause of action would accrue when the allegedly defamatory statement is made, it seems that there would be no point in time when a political subdivision would no longer be exposed to liability for any statements made about a former employee regardless of how long the person has been a former employee, as long as the statement related to the former employee's employment.
 

 {¶ 39} I share some of the majority's misgivings with the impact of R.C. 2744.09(B) when applied as written. I recognize, as the majority notes in adopting the decision in
 
 Fleming
 
 , that a strict reading of the statute prevents former employees of political subdivisions-more precisely, former employees whose claims arise after the employment relationship has ended-from being able to sustain their claims against a political subdivision in the face of governmental immunity. But what the majority fails to recognize is, as harsh or as unfair as that result may be (particularly to people who may be unjustly terminated), carving out an exception to immunity for such a clearly defined group appears to be precisely what the General Assembly intended. The legislature may plausibly have intended to maintain the immunity of political subdivisions for post-termination statements made about a former employee. Again, immunity is the rule, so exceptions are to be narrowly construed.
 

 {¶ 40} Piazza was not an employee at the time the county executive's statements were made, so the statements did not arise out of an employment relationship between an employee and a political subdivision for purposes of R.C. 2744.09(B). I would disapprove
 
 Fleming
 
 and find, as a matter of law, that the county is immune from the false light invasion of privacy action.
 

 The majority's reliance on
 
 George v. Newburgh Hts.
 
 ,
 
 2012-Ohio-2065
 
 ,
 
 970 N.E.2d 1138
 
 , ¶ 6 (8th Dist.), is not on point because the opinion makes it clear that allegedly tortious conduct occurred either before George had been terminated or that the termination itself was tortious. That George's alleged harassment continued "in the weeks immediately following his lay off" was a continuation of the tortious conduct that predated his termination.
 

 The Ohio Supreme Court has characterized Ohio Legislative Service Commission's analyses as "legislative history" that it may refer to "when we find them helpful and objective."
 
 Meeks v. Papadopulos
 
 ,
 
 62 Ohio St.2d 187
 
 , 191,
 
 404 N.E.2d 159
 
 (1980).
 
 See also
 
 R.C. 1.49(C).