KATHLEEN ANN KEOUGH, A.J.:
 

 {¶ 1} Defendant-appellant, Cuyahoga County, appeals the trial court's decision denying its motion for summary judgment based on political subdivision immunity and the statute of limitations. For the reasons that follow, we affirm in part and dismiss in part.
 

 {¶ 2} Marcella King Piazza ("Piazza") began working for the county auditor's office in July 2003. She was transferred to the county board of revision and served as the office manager. Subsequently, in August 2010, Piazza was transferred to the Department of Justice Affairs as a victim advocate. Around the time of Piazza's transfer, the Plain Dealer Publishing Company ("Plain Dealer") started publishing a series of articles about the Cuyahoga County Board of Revision, claiming that an investigation was underway into the employees and board members' work habits and mismanagement within the department. One article characterized the matter as a "scandal."
 

 {¶ 3} On March 9, 2011, Piazza was terminated from employment with the county, along with Robert Chambers and Hanane Hmada, who previously worked in the board of revision.
 

 {¶ 4} Within 90 minutes of her discharge, Piazza received a telephone call from a Plain Dealer reporter seeking comment on her discharge; Piazza declined to comment. Approximately 20 minutes later, at 11:50 a.m., the Plain Dealer published the initial article on www.cleveland.com, under the headline: "Cuyahoga County Executive Ed FitzGerald fires three employees tied to the boards of revision scandal." In the article, former County Executive Edward FitzGerald's spokesperson explained that the firing was "due to our reorganization of the board of revision." However, the cleveland.com post explained that the three terminated employees, including Piazza, were reassigned to other county departments in August after the
 Plain Dealer reported about the poor work habits of board employees. The article repeated details of corruption at the board of revision, including that delays by the board members had cost local school districts and public agencies millions of dollars in tax revenue, and that altered tax documents had reduced property values in the county by more than $400 million.
 

 {¶ 5} A second article, titled, "Cuyahoga County Executive Ed FitzGerald says he couldn't justify keeping reassigned board of revision workers in new positions," was posted later that day at 6:22 p.m. The Plain Dealer stated that "FitzGerald said he can't justify budgeting money for the positions Chambers and two other board castoffs were moved to, so * * * he fired all three." The article then identified the three employees-one of whom was Piazza. FitzGerald was quoted as saying "instead of terminating them, the previous administration reassigned them. * * * We can't afford to reshuffle people for their own job security." Included in this article was a photograph of Piazza-a photograph that was provided by the county.
 

 {¶ 6} Although she was not a board member, Piazza claimed that the articles created an inference that she was a board member and involved in the "county corruption scandal."
 

 {¶ 7} In 2015, Piazza filed a complaint against Cuyahoga County ("the county") and the Plain Dealer alleging false light invasion of privacy. The allegations stemmed from the quoted statements by FitzGerald, which were printed by the Plain Dealer. Piazza claimed that FitzGerald made the statements with a "reckless disregard for the truth or falsity of his statement."
 

 {¶ 8} The county moved for summary judgment, contending that it was immune from liability pursuant to R.C. 2744.02, and that Piazza's complaint was time-barred. In response, Piazza claimed that res judicata barred the county's claim of immunity. The trial court denied the county's motion, concluding that "genuine issues of material fact exists [sic] and [Piazza's] false light claim is not time-barred, nor does political subdivision immunity apply to [Piazza's] claim arising from her employment relationship with [the county]."
 

 {¶ 9} The county appeals on the authority of R.C. 2744.02(C), raising five assignments of error that will be addressed together where appropriate.
 

 I. Political Subdivision Immunity
 

 {¶ 10} In its first, second, third, and fourth assignments of error, the county contends that the trial court erred in denying its motion for political subdivision immunity on Piazza's sole claim for false light invasion of privacy. Specifically, the county raises the following assignments of error:
 

 Error No. 1: The trial court erred in finding that political subdivision immunity did not apply to plaintiff's sole claim for false light invasion of privacy.
 

 Error No. 2: The trial court erred in denying Appellant's Motion for Summary Judgment where none of the exceptions to political subdivision immunity applied.
 

 Error No. 3: The trial court erred in finding that plaintiff's claim arose from her employment relationship where plaintiff was not an employee and no causal connection or causal relationship between plaintiff's false light claim and the employment relationship was established.
 

 Error No. 4: The trial court erred in denying Cuyahoga County's Motion for Summary Judgment where Plaintiff's sole opposition was an erroneous contention that res judicata barred Appellant's statutory immunity and statute of limitations
 arguments and failed to oppose summary judgment with proper evidence.
 

 {¶ 11} An appellate court review a trial court's decision on a motion for summary judgment de novo.
 
 Grafton v. Ohio Edison Co.
 
 ,
 
 77 Ohio St.3d 102
 
 , 105,
 
 671 N.E.2d 241
 
 (1996). Summary judgment is appropriate when, construing the evidence most strongly in favor of the nonmoving party, (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can only reach a conclusion that is adverse to the nonmoving party.
 
 Zivich v. Mentor Soccer Club, Inc.
 
 ,
 
 82 Ohio St.3d 367
 
 , 369-370,
 
 696 N.E.2d 201
 
 (1998).
 

 {¶ 12} The party moving for summary judgment bears the burden of demonstrating that no material issues of fact exist for trial.
 
 Dresher v. Burt
 
 ,
 
 75 Ohio St.3d 280
 
 , 292-293,
 
 662 N.E.2d 264
 
 (1996). The moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential elements of the nonmoving party's claims.
 

 Id.
 

 After the moving party has satisfied this initial burden, the nonmoving party has a reciprocal duty to set forth specific facts by the means listed in Civ.R. 56(C) showing that there is a genuine issue of material fact.
 

 Id.
 

 {¶ 13} Determining whether a governmental entity is immune from tort liability involves a three-step analysis.
 
 Elston v. Howland Local Schools
 
 ,
 
 113 Ohio St.3d 314
 
 ,
 
 2007-Ohio-2070
 
 ,
 
 865 N.E.2d 845
 
 , ¶ 10. First, R.C. 2744.02(A)(1) sets forth the general blanket immunity applicable to political subdivisions. It provides that a political subdivision is generally not liable in a civil action for injury, death, or loss to persons or property incurred while performing governmental or proprietary functions. To overcome this statutory immunity, a plaintiff must show that one of the five exceptions contained in R.C. 2744.02(B) applies. If a plaintiff demonstrates that one of the five enumerated exceptions to governmental immunity applies, a political subdivision may then assert one of the defenses set forth in R.C. 2744.03(A) to revive its immunity.
 

 {¶ 14} Piazza does not dispute that the county is a political subdivision and that none of the exceptions under R.C. 2744.02(B) apply in this matter. However, she contends on appeal that the county is not entitled to immunity pursuant to R.C. 2744.09, which provides,
 

 This chapter does not apply to, and shall not be construed to apply to, the following:
 

 * * *
 

 (B) Civil actions by an employee * * * against his political subdivision relative to any matter that arises out of the employment relationship between the employee and the political subdivision[.]
 

 {¶ 15} Accordingly, if the provisions in R.C. 2744.09(B) apply, then the immunity provisions do not apply to this matter. Piazza maintains that her termination and the statements made in reference to it was an employment matter, so immunity does not apply. The county, however, claims that the false light invasion of privacy claim did not "arise out of the employment relationship" because Piazza had been terminated prior to the county executive's statements and prior to her filing the complaint against the county.
 

 {¶ 16} False light invasion of privacy is an intentional tort. Typically, "an employer's intentional tort against an employee does not arise out of the employment relationship, but occurs outside the scope of employment."
 

 Brady v. Safety-Kleen Corp.
 
 ,
 
 61 Ohio St.3d 624
 
 ,
 
 576 N.E.2d 722
 
 (1991), paragraph one of the syllabus. However, when the conduct forming the basis of the intentional tort arose out of the employment relationship, the employer may not have the benefit of immunity pursuant to the plain language of R.C. 2744.09(B).
 
 Sampson v. Cuyahoga Metro. Hous. Auth.
 
 ,
 
 131 Ohio St.3d 418
 
 ,
 
 2012-Ohio-570
 
 ,
 
 966 N.E.2d 247
 
 , paragraph one of the syllabus;
 
 see also
 

 Davis v. Cleveland
 
 , 8th Dist. Cuyahoga No. 83665,
 
 2004-Ohio-6621
 
 ,
 
 2004 WL 2829027
 
 ,
 
 Fleming v. Ashtabula Area City School Bd. of Edn.
 
 , 11th Dist. Ashtabula. No. 2006-A-0030,
 
 2008-Ohio-1892
 
 ,
 
 2008 WL 1777833
 
 ,
 
 appeal not allowed
 
 ,
 
 119 Ohio St.3d 1473
 
 ,
 
 2008-Ohio-4911
 
 ,
 
 894 N.E.2d 332
 
 ,
 
 Patrolman "X" v. Toledo
 
 ,
 
 132 Ohio App.3d 374
 
 ,
 
 725 N.E.2d 291
 
 (6th Dist.1999).
 

 {¶ 17} The county contends that neither the holding in
 
 Sampson
 
 nor R.C. 2744.09(B) controls in this matter because Piazza was not an employee at the time she brought her claim, and that she and the county had not had an employment relationship for more than two years prior to the filing of her complaint.
 

 {¶ 18} The Eleventh District addressed this precise matter in
 
 Fleming
 
 and concluded that R.C. 2744.09(B) applies to matters arising from the employment relationship even after the employee has been terminated.
 
 Id.
 
 at ¶ 34. As recognized by
 
 Fleming
 
 , the legislature could have limited the application of the statute to cover only current employees; however, by using the language "relative to any matter that arises out of the employment relationship," R.C. 2744.09(B) is intended to encompass more than just current employees.
 
 Id.
 

 {¶ 19} We agree with
 
 Fleming
 
 that a strict reading of the statute would deny a former employee a remedy for intentional tortious comments made after his or her employment has ended.
 
 Id.
 
 "To hold otherwise would encourage employers to terminate employees to avoid potential liability when an incident has occurred."
 
 Id.
 
 at ¶ 31.
 

 {¶ 20}
 
 Fleming's
 
 interpretation of R.C. 2744.09(B) is consistent with this court's decision in
 
 George v. Newburgh Hts.
 
 , 8th Dist. Cuyahoga No. 97320,
 
 2012-Ohio-2065
 
 ,
 
 970 N.E.2d 1138
 
 . This court stated that when determining whether an individual's intentional tort claim arose out of the employment relationship with the political subdivision, the totality of the circumstances must be reviewed. In
 
 George
 
 , the plaintiff, a detective with the village's police department, brought an intentional infliction of emotional distress claim against the village after he was laid off. George maintained that he was subject to a smear campaign by his fellow officers and others in the months preceding his lay-off and in the weeks immediately following. The tortious actions were allegedly a result of George's internal investigation of alleged misdoings within the police and other village departments.
 

 {¶ 21} This court concluded that "the totality of the circumstances indicates that Detective George's claim * * * flowed from the actions taken by the Village in response to the internal investigation he was conducting. * * * [I]t is clear * * * that Detective George's claims stem from his employment with the Village."
 
 Id.
 
 at ¶ 23-24. This court made no distinction between the alleged comments made before George was laid off (employed) and after he was laid off (formerly employed) when determining whether George's claims stemmed from his "employment relationship with the Village." Accordingly, this court found that the village was not immune from liability under R.C. 2744.09(B).
 

 {¶ 22} Whether there is a causal connection or causal relationship between Piazza's intentional-tort claim and her
 employment relationship depends on the circumstances of the case. Looking at the factual basis for Piazza's claim, it is the alleged conduct and Piazza's employment relationship that govern the applicability of R.C. 2744.09. It cannot be ignored that the comments by the county executive or his spokesperson were made within two hours of Piazza's termination. Moreover, the only relationship between Piazza and the county executive was that of employment, and the comments arose out of her employment because they were directly related to Piazza's work performance and employment within the county. Finally, the comments explained why Piazza was terminated from employment.
 

 {¶ 23} Accordingly, Piazza's claims arose out of her employment relationship with the county, and the county is not immune from liability pursuant to the express exception in R.C. 2744.09(B). The county's first, second, third, and fourth assignments of error are overruled.
 

 II. Statute of Limitations
 

 {¶ 24} In its fifth assignment of error, the county contends that the trial court erred by finding that the false light invasion of privacy claim was not barred by the relevant statute of limitations period. This court lacks jurisdiction to address this assignment of error.
 

 {¶ 25} Generally, an order denying a motion to dismiss is not a final, appealable order.
 
 DiGiorgio v. Cleveland
 
 ,
 
 196 Ohio App.3d 575
 
 ,
 
 2011-Ohio-5824
 
 ,
 
 964 N.E.2d 495
 
 , ¶ 4 (8th Dist.), citing
 
 Polikoff v. Adam
 
 ,
 
 67 Ohio St.3d 100
 
 , 103,
 
 616 N.E.2d 213
 
 (1993). However, under R.C. 2744.02(C), "[a]n order that denies a political subdivision or an employee of a political subdivision the benefit of an alleged immunity from liability as provided in this chapter or any other provision of the law is a final order."
 

 {¶ 26} While the county's claim that the trial court erred by denying its motion for summary judgment based on immunity was final, its appeal from the denial of its motion for summary judgment based on the statute of limitations was not.
 
 Riscatti v. Prime Props. Ltd. Partnership
 
 ,
 
 137 Ohio St.3d 123
 
 ,
 
 2013-Ohio-4530
 
 ,
 
 998 N.E.2d 437
 
 , ¶ 19-20 (denial of dispositive motions based on a statute-of-limitations defense does not deny the benefit of immunity and is not a final, appealable order even though it arose along with a political subdivision's immunity claim);
 
 Gates v. Leonbruno
 
 ,
 
 2016-Ohio-5627
 
 ,
 
 70 N.E.3d 1110
 
 , ¶ 30 (8th Dist.), (when appealing a denial of a motion for summary judgment on immunity grounds under R.C. 2744.02(C), a party cannot raise other alleged errors concerning the denial of its motion for summary judgment).
 

 {¶ 27} Accordingly, this assignment of error is disregarded for lack of jurisdiction.
 

 {¶ 28} Judgment affirmed in part and dismissed in part.
 

 MARY J. BOYLE, J., CONCURS;
 

 MELODY J. STEWART, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE OPINION