[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Piazza v. Cuyahoga Cty.,* Slip Opinion No. 2019-Ohio-2499.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2019-OHIO-2499

PIAZZA, APPELLEE, *v.* CUYAHOGA COUNTY, APPELLANT, ET AL.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Piazza v. Cuyahoga Cty.*, Slip Opinion No. 2019-Ohio-2499.]

*Political-subdivision tort liability—R.C. 2744.09(B)'s exception to immunity for civil actions by an employee "relative to any matter that arises out of the employment relationship between the employee and the political subdivision"—R.C. 2744.09(B) does not require that the alleged tortious conduct underlying a claim against a political subdivision have occurred during the plaintiff's employment by the political subdivision—Plaintiff's claim for false-light invasion of privacy is relative to a matter that arose out of her employment relationship with county—Court of appeals' judgment affirming trial court's rejection of county's assertion of immunity affirmed.*

(No. 2017-1649—Submitted March 5, 2019—Decided June 26, 2019.)

APPEAL from the Court of Appeals for Cuyahoga County, No. 104724, 2017-Ohio-8163.

_____

**FRENCH, J.**

{¶ 1} This appeal asks us to clarify the meaning of R.C. 2744.09(B), which provides that the Political Subdivision Tort Liability Act, R.C. Chapter 2744, does not apply to "[c]ivil actions by an employee * * * against his political subdivision relative to any matter that arises out of the employment relationship between the employee and the political subdivision."

{¶ 2} Appellee, Marcella King Piazza, sued her former employer, appellant, Cuyahoga County, for false-light invasion of privacy based on a statement allegedly made by Cuyahoga County Executive Ed FitzGerald regarding the termination of Piazza's employment. Both the Cuyahoga County Court of Common Pleas and the Eighth District Court of Appeals applied R.C. 2744.09(B) to reject the county's assertion of political-subdivision immunity. We affirm.

*Facts and procedural background*

{¶ 3} In 2003, Piazza began working as an office manager for the Cuyahoga County Board of Revision ("BOR"). She continued to work there until August 2010, when the county transferred her from the BOR to the Department of Justice Affairs. In June 2010, about two months before Piazza's transfer, the Plain Dealer Publishing Company ("Plain Dealer") began to publish a series of articles reporting on an ongoing investigation into the BOR and its employees and board members. In December 2010, the Plain Dealer described its investigation as having "unearthed rampant mismanagement, deplorable work habits, questionable tax breaks, favors for the connected and violations of state law."

{¶ 4} On March 9, 2011, the county terminated Piazza's employment as well as the employment of two other county employees who had previously worked at the BOR. In a press release, County Executive FitzGerald stated, "Today three people have been terminated from employment with Cuyahoga County due to the reorganization of the Cuyahoga County Board[] of Revision." Within 90 minutes

2

of being informed of her termination, Piazza received a telephone call from a Plain Dealer reporter seeking comment on her discharge. Piazza refused to comment.

{¶ 5} About 30 minutes later, the Plain Dealer published an article on www.cleveland.com with the headline, "Cuyahoga County Executive Ed FitzGerald fires three employees tied to board[] of revision scandal." The article began, "Three more Cuyahoga County employees have lost their jobs because of the extensive dysfunction and mismanagement uncovered last year at the board[] of revision." Despite noting that Piazza and the other two terminated employees had been reassigned in August 2010 to other county departments "after The Plain Dealer reported about poor work habits of board employees," the article quoted a FitzGerald spokesperson as stating that the terminations were "due to our reorganization of the board of revision."

{¶ 6} Later that day, the Plain Dealer published a second article with the headline, "Cuyahoga County Executive Ed FitzGerald says he couldn't justify keeping reassigned board[] of revision workers in new positions." The second article quoted FitzGerald as stating, "Instead of terminating [Piazza and the other two former BOR employees], the previous administration reassigned them. * * * We can't afford to reshuffle people for their own job security." The second article included a photograph of Piazza that the county had supplied.

{¶ 7} Piazza initially filed a complaint for false-light invasion of privacy against the county and the Plain Dealer in October 2013 ("*Piazza I*"), but she later voluntarily dismissed that complaint pursuant to Civ.R. 41(A)(1). She filed this action against the county and the Plain Dealer in August 2015. Piazza bases her false-light claim against the county on the quoted statement from FitzGerald, and she alleges that the statement created a false inference that she was involved in the BOR corruption scandal. Piazza alleges that the statement was made with a reckless disregard for its truth or falsity. She also alleges that as a result of conduct by the county and the Plain Dealer, she suffered severe emotional distress, public

humiliation, and damage to her personal and professional reputation. Here, we are concerned only with Piazza's claim against the county.

{¶ 8} The county moved for summary judgment, arguing that it was immune from liability pursuant to R.C. 2744.02(A) and that Piazza's claim was time-barred. The trial court denied the county's motion for summary judgment in a two-sentence journal entry, holding that "[g]enuine issues of material fact exist and [Piazza's] false light claim is not time-barred, nor does political subdivision immunity apply to [Piazza's] claim arising from her employment relationship with" the county.

{¶ 9} The county filed an interlocutory appeal from the denial of its motion for summary judgment. The Eighth District addressed only the question of immunity, and in a two-to-one decision, it affirmed the trial court's rejection of the county's assertion of immunity, holding that Piazza's claim "arose out of her employment relationship with the county, and the county is not immune from liability pursuant to the express exception in R.C. 2744.09(B)." 2017-Ohio-8163, 98 N.E.3d 1263, ¶ 23.

{¶ 10} This court accepted the county's discretionary appeal. 152 Ohio St.3d 1442, 2018-Ohio-1600, 96 N.E.3d 298. The county maintains that R.C. 2744.09(B) is unambiguous, is in derogation of common-law immunity, and must be strictly construed in favor of immunity. The county essentially asks this court to hold that R.C. 2744.09(B) does not apply when a former employee of a political subdivision brings an intentional-tort claim that accrued when she was no longer employed by the political subdivision. In particular, the county argues that a former employee is not an "employee" under R.C. 2744.09(B) and that such a claim does not "arise[] out of the employment relationship."

*Analysis*

{¶ 11} R.C. Chapter 2744, the Political Subdivision Tort Liability Act, establishes a comprehensive statutory scheme for the tort liability of political

4

subdivisions and their employees. The act initially sets out a broad, general rule that a political subdivision is not liable in damages in civil actions for injury, death or loss to person or property caused by an act or omission in connection with a governmental or proprietary function. R.C. 2744.02(A)(1). The act, however, goes on to provide several exceptions to immunity, R.C. 2744.02(B), as well as defenses to those exceptions, R.C. 2744.03.

**{¶ 12}** R.C. 2744.09 identifies certain scenarios in which R.C. Chapter 2744 does not apply. As relevant here, R.C. 2744.09(B) provides that Chapter 2744 "does not apply to, and shall not be construed to apply to * * * [c]ivil actions by an employee * * * against his political subdivision relative to any matter that arises out of the employment relationship between the employee and the political subdivision." R.C. 2744.09(B) "is designed to protect employees by allowing them to recover against their employers, who would otherwise be entitled to immunity under R.C. Chapter 2744." *Sampson v. Cuyahoga Metro. Hous. Auth.*, 131 Ohio St.3d 418, 2012-Ohio-570, 966 N.E.2d 247, ¶ 13.

**{¶ 13}** The county asserted in its motion for summary judgment that it is immune from Piazza's claim pursuant to the general grant of immunity in R.C. 2744.02(A)(1) because R.C. 2744.02(B) does not provide any exceptions to immunity for intentional torts. In response, Piazza did not dispute that the county is a political subdivision nor did she argue that any exception to immunity in R.C. 2744.02(B) applies here. Piazza primarily argued that issue preclusion barred the county's immunity argument, but she also quoted *Sampson* for the proposition that "[w]hen an employee of a political subdivision brings a civil action against the political subdivision alleging an intentional tort, that civil action may qualify as a 'matter that arises out of the employment relationship' within the meaning of R.C. 2744.09(B)," *id.* at paragraph one of the syllabus, quoting R.C. 2744.09(B). Piazza noted that she had previously opposed the county's motion for judgment on the pleadings in *Piazza I* by arguing that the intentional nature of the tort she alleges

does not "erase[]" "the employment relationship between [Piazza] and the County" or preclude a finding that the alleged tort arose out of the employment relationship.

{¶ 14} Both the trial court and the Eighth District applied R.C. 2744.09(B) to reject the county's assertion of immunity. Because the order on appeal is a denial of a motion for summary judgment, we review the matter de novo, governed by the standards in Civ.R. 56. *Vacha v. N. Ridgeville*, 136 Ohio St.3d 199, 2013-Ohio-3020, 992 N.E.2d 1126, ¶ 19, citing *Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, ¶ 8.

{¶ 15} This appeal presents a legal question—whether R.C. 2744.09(B) requires an ongoing employment relationship between the plaintiff and the political-subdivision employer, either at the time the plaintiff's claim accrued or at the time the plaintiff filed her complaint—and a factual question—whether Piazza's false-light claim is relative to a matter that arises out of her employment relationship with the county. We address the legal question first.

### R.C. 2744.09(B) does not require an ongoing employment relationship between the plaintiff and the political-subdivision employer

{¶ 16} A dispute over the meaning of a statute presents a question of law that we consider de novo. *Progressive Plastics, Inc. v. Testa*, 133 Ohio St.3d 490, 2012-Ohio-4759, 979 N.E.2d 280, ¶ 15. Our primary goal in statutory interpretation is to give effect to the legislature's intent. *Christe v. GMS Mgt. Co., Inc.*, 88 Ohio St.3d 376, 377, 726 N.E.2d 497 (2000). To do so, we look to and give effect to the statutory language without deleting or inserting words. *Bailey v. Republic Engineered Steels, Inc.*, 91 Ohio St.3d 38, 39-40, 741 N.E.2d 121 (2001), citing *Provident Bank v. Wood*, 36 Ohio St.2d 101, 105, 304 N.E.2d 378 (1973), and *Cleveland Elec. Illum. Co. v. Cleveland*, 37 Ohio St.3d 50, 524 N.E.2d 441 (1988), paragraph three of the syllabus.

6

{¶ 17} The county argues that for R.C. 2744.09(B) to apply to her claim, Piazza needed to be a current county employee, both when her claim accrued and when she filed her complaint.

{¶ 18} The Eighth District rejected the county's argument that because the alleged tortious conduct—the statement by FitzGerald—occurred after the county terminated Piazza's employment, her claim does not arise out of her employment relationship with the county. 2017-Ohio-8163, 98 N.E.3d 1263, at ¶ 17-19. In doing so, it relied on *Fleming v. Ashtabula Area City School Bd. of Edn.*, 11th Dist. Ashtabula No. 2006-A-0030, 2008-Ohio-1892. Fleming was a substitute teacher employed by a school board of education that chose not to renew his contract. Following a school-board meeting at which the board discussed its decision not to renew Fleming's contract, the school-district superintendent made allegedly defamatory statements about Fleming during a radio interview. Fleming thereafter filed an action, including a defamation claim, against the school board.

{¶ 19} The Eleventh District applied R.C. 2744.09(B) and affirmed the trial court's rejection of the school board's assertion of immunity. Like the county here, the school board in *Fleming* argued that R.C. 2744.09(B) did not apply, because the plaintiff was not an employee at the time the alleged torts occurred. The Eleventh District rejected that argument. It stated:

> The language of the statute expressly connects the terms "employee" and "arises out of the employment relationship." Obviously, therefore, the statute only applies to former employees if the alleged tortious conduct arises out of the employment relationship. Appellants [the school board and superintendent] are requesting an interpretation that affords an exception to the immunity only if the conduct occurred while the employee was technically employed. If the legislature intended the statute to be as

narrow as appellants suggest, it would have been quite simple to limit the application of the statute by stating just that. However, it seems clear that "relative to *any* matter that arises out of the employment relationship" is intended to encompass much more than appellants propose.

(Emphasis sic.) *Id.* at ¶ 34.

**{¶ 20}** When the General Assembly intends to require that conduct or injuries have occurred during ongoing employment, it does so expressly. For example, with respect to employer intentional torts, R.C. 2745.01(A) refers to claims "for damages resulting from an intentional tort *committed* by the employer *during the course of employment*." (Emphasis added.) Similarly, R.C. 4113.52(A), which requires an employee to report certain violations of law by an employer, applies only if the employee became aware of the violation "*in the course of* the employee's employment." (Emphasis added.)

**{¶ 21}** In the context of workers' compensation, a compensable injury must have occurred "in the course of, *and* arising out of, the injured employee's employment." (Emphasis added.) R.C. 4123.01(C). In distinguishing those concepts, we have held that "in the course of" relates to "the time, place, and circumstances of the injury"—so as to limit "benefits to employees who sustain injuries while engaged in a required employment duty or activity consistent with their contract for hire and logically related to the employer's business." *Friebel v. Visiting Nurse Assn. of Mid-Ohio*, 142 Ohio St.3d 425, 2014-Ohio-4531, 32 N.E.3d 413, ¶ 13. On the other hand, "arising out of" focuses on the causal connection between the employment and the injury. *Id.* at ¶ 14.

**{¶ 22}** The General Assembly did not use "in the course of" or "during the course of" language in R.C. 2744.09(B). Instead, it broadly removed from the purview of R.C. Chapter 2744 civil actions "relative to any matter that arises out of

the employment relationship." *Id.* A claim " 'arises out of the employment relationship' " between an employee and a political-subdivision employer " 'if there is a causal connection or a causal relationship between the claims raised by the employee and the employment relationship.' " *Vacha*, 136 Ohio St.3d 199, 2013-Ohio-3020, 992 N.E.2d 1126, at ¶ 17, quoting *Sampson*, 131 Ohio St.3d 418, 2012-Ohio-570, 966 N.E.2d 247, at paragraph two of the syllabus. The test under R.C. 2744.09(B) is one of causal connection, not of timing.

{¶ 23} The county relies on the General Assembly's use of the present-tense "arises" in R.C. 2744.09(B) to argue that the General Assembly intended to require an ongoing employment relationship at the time a claim accrued, but the use of the present tense there does not demonstrate that intention. Rather, because the phrase "arises out of" refers to the existence of a causal connection, the phrase, read in the context of the entire statute, requires only that there have been a causal connection between the claim and the employment relationship, whether or not the employment relationship was continuing or had terminated. We conclude that R.C. 2744.09(B) does not require that the alleged tortious conduct underlying a claim against a political subdivision have occurred *during* the plaintiff's employment by the political subdivision.

{¶ 24} The county argues that its contrary reading of R.C. 2744.09(B) and its belief that the statute is inapplicable here are consistent with *Sampson* and *Vacha*, because the torts in those cases occurred while the plaintiffs were still employed. We disagree. In *Sampson*, we simply rejected the employer's attempt to import from workers' compensation law the fiction that an intentional tort, by definition, is outside the scope of employment. *Sampson* at ¶ 12-14. We held that a civil action against a political subdivision alleging an intentional tort "may qualify as a 'matter that arises out of the employment relationship' within the meaning of R.C. 2744.09(B)." *Id.* at ¶ 17. *Vacha* followed *Sampson* and reiterated that whether R.C. 2744.09(B) applies depends on whether, based on the particular evidence

presented in the case, there is a causal connection between the claim and the employment relationship. *Vacha* at ¶ 19. Neither *Sampson* nor *Vacha* dictates the result in this case.

{¶ 25} Before turning to the question whether Piazza's claims, in fact, arose out of the employment relationship between Piazza and the county, we briefly address—and reject—the county's argument that the plaintiff must have been an employee at the time she *filed* a lawsuit against a political-subdivision employer in order for R.C. 2744.09(B) to apply.

{¶ 26} The county argues that because R.C. 2744.09 applies to "civil actions by an employee," the statute unambiguously requires that the plaintiff have been an "employee" when she filed her complaint. As used in R.C. Chapter 2744, " '[e]mployee' means an officer, agent, employee, or servant, whether or not compensated or full-time or part-time, who is authorized to act and is acting within the scope of the officer's, agent's, employee's, or servant's employment for a political subdivision." R.C. 2744.01(B). In light of that definition, the county's reading of R.C. 2744.09(B) is plausible. But so is Piazza's reading: that the statutory language does not put conditions on *when* an action was filed, so long as the claim arises from the employment relationship. Reading R.C. 2744.09(B) in its entirety, we agree with the Eleventh District that based on the statute's failure to "specifically address at what point the employee must have been employed by the political subdivision," the statute is ambiguous. *Fleming*, 11th Dist. Ashtabula No. 2006-A-0030, 2008-Ohio-1892, at ¶ 30.

{¶ 27} We reject the county's argument that we must interpret any ambiguity in R.C. 2744.09(B) in favor of political-subdivision immunity. The county argues that because the exceptions to immunity in R.C. 2744.02(B) are in derogation of the general grant of immunity in R.C. 2744.02(A), courts must construe the exceptions narrowly to maintain the policy balance the General Assembly established. *See, e.g.*, *Doe v. Dayton City School Dist. Bd. of Edn.*, 137

10

Ohio App.3d 166, 169, 738 N.E.2d 390 (2d Dist.1999); *Harp v. Cleveland Hts.*, 87 Ohio St.3d 506, 514-515, 721 N.E.2d 1020 (2000) (Cook, J., dissenting), citing *Wall v. Cincinnati*, 150 Ohio St. 411, 83 N.E.2d 389 (1948). R.C. 2744.09(B), however, differs from R.C. 2744.02(B). R.C. 2744.02(A)(1) states that political subdivisions are immune from liability "[e]xcept as provided in [R.C. 2744.02](B)." It does not refer to R.C. 2744.09, which states that R.C. Chapter 2744—including the general grant of immunity in R.C. 2744.02(A)(1)—shall not be construed as applying to the situations listed in R.C. 2744.09. In those situations, therefore, we do not start with an assumption of immunity, and the policy justification for construing an exception in favor of immunity is absent.

{¶ 28} Neither this court nor, as far as we can discern, any Ohio appellate court has ever adopted the county's position that R.C. 2744.09(B) applies only if the plaintiff was still an employee of the political subdivision when she filed her complaint. To the contrary, in the nearly 34 years since the enactment of R.C. 2744.09(B), Ohio courts—including this court—have repeatedly applied the statute in cases filed after the plaintiff's employment by a political subdivision had ended. *See Vacha v. N. Ridgeville*, 9th Dist. Lorain No. 10CA009750, 2011-Ohio-2446, ¶ 20-24 (although plaintiff was granted permanent-total-disability benefits prior to filing complaint, R.C. 2744.09(B) precluded immunity so long as there was a causal connection between Vacha's claims and her employment relationship with the city), *aff'd*, 136 Ohio St.3d 199, 2013-Ohio-3020, 992 N.E.2d 1126; *George v. Newburgh Hts.*, 2012-Ohio-2065, 970 N.E.2d 1138 (8th Dist.); *Steinbrink v. Greenon Local School Dist.*, 2d Dist. Clark No. 11CA0050, 2012-Ohio-1438; *Long v. Hanging Rock*, 4th Dist. Lawrence No. 09CA30, 2011-Ohio-5137; *Fleming*, 11th Dist. Ashtabula No. 2006-A-0030, 2008-Ohio-1892, ¶ 31; *Gessner v. Union*, 159 Ohio App.3d 43, 2004-Ohio-5770, 823 N.E.2d 1 (2d Dist.).

{¶ 29} The General Assembly has instructed courts to presume that in enacting R.C. 2744.09(B), it intended a "just and reasonable result." R.C. 1.47(C).

Reading the word "employee" in R.C. 2744.09(B) as requiring an ongoing employment relationship at the time a plaintiff files an employment-related claim against her political-subdivision employer would give rise to an unreasonable result. As the Eleventh District has astutely noted, such a reading "would encourage employers to terminate employees to avoid potential liability when an incident has occurred." *Fleming* at ¶ 31. It is unreasonable to presume that the General Assembly intended to incentivize an employer to terminate an employee who may have an employment-related claim to preserve its entitlement to political-subdivision immunity.

{¶ 30} We reject the dissenting opinion's assertion that we are interfering with the General Assembly's constitutional authority to make policy for the state. Indeed, it is undisputed that it is not this court's role to second-guess the General Assembly's policy choices. *Ohio Neighborhood Fin., Inc. v. Scott*, 139 Ohio St.3d 536, 2014-Ohio-2440, 13 N.E.3d 1115, ¶ 38, citing *Kaminski v. Metal & Wire Prods. Co.*, 125 Ohio St.3d 250, 2010-Ohio-1027, 927 N.E.2d 1066, ¶ 61. But it *is* our constitutional role "to interpret the law that the General Assembly enacts," with the "primary goal * * * to ascertain and give effect to the intent of the legislature." *State v. Taylor*, 138 Ohio St.3d 194, 2014-Ohio-460, 5 N.E.3d 612, ¶ 14. And in light of the General Assembly's stated intention to achieve a "just and reasonable" result when enacting a statute, R.C. 1.47(C), we have recognized that " 'statutes will be construed to avoid unreasonable or absurd consequences.' " *State v. White*, 142 Ohio St.3d 277, 2015-Ohio-492, 29 N.E.3d 939, ¶ 29, quoting *State v. Wells*, 91 Ohio St.3d 32, 34, 740 N.E.2d 1097 (2001).

{¶ 31} In accord with the prior decisions cited above and to avoid the unreasonable results that would arise from a contrary ruling, we hold that R.C. 2744.09(B) does not require that a plaintiff have been employed by the political-subdivision employer at the time she filed her lawsuit.

**Piazza's false-light claim is "relative to [a] matter that arises out of the employment relationship"**

{¶ 32} We now turn from the legal question regarding the meaning of R.C. 2744.09(B) to the factual question whether Piazza's false-light claim is "relative to any matter that arises out of the employment relationship" between Piazza and the county. In answering that question, we must consider whether there is a causal connection between Piazza's claim and her employment relationship with the county. *Sampson*, 131 Ohio St.3d 418, 2012-Ohio-570, 966 N.E.2d 247, at paragraph two of the syllabus.

{¶ 33} As part of its de novo review of the trial court's rejection of the county's assertion of immunity, the court of appeals held that Piazza's claim arose out her employment relationship with the county. 2017-Ohio-8163, 98 N.E.3d 1263, at ¶ 11, 23. We likewise apply a de novo standard of review. *Sampson* at ¶ 19. And in doing so, we agree with the Eighth District's conclusion that there is no genuine issue of material fact and that Piazza's claim is relative to a matter that arose out of her employment relationship with the county.

{¶ 34} As we consider whether there is a causal connection between Piazza's claim and her employment relationship with the county, we are not judging the merits of Piazza's claim; that question is not before us. We therefore do not consider the county's arguments that Piazza's claim does not satisfy the required elements of a false-light claim or that the defense of truth will bar the county's liability. Instead, we consider only whether there is a genuine issue of material fact regarding a causal connection between Piazza's claim and her employment relationship with the county. Whether Piazza can succeed on the merits of her claim is a question for the trial court.

{¶ 35} The statement forming the basis of Piazza's claim against the county concerns, and was made at about the same time as, the county's termination of her employment. According to Piazza, the quoted statement falsely connected her and

her termination with the BOR corruption scandal. Termination of employment is a matter that arises out of the employment relationship. *Gessner*, 159 Ohio App.3d 43, 2004-Ohio-5770, 823 N.E.2d 1, at ¶ 31. In *Schmitt v. Cuyahoga Cty. Educational Serv. Ctr.*, the Eighth District held that because the plaintiff's claims, including claims for negligent and intentional infliction of emotional distress, "stem from the termination of her employment, it is apparent there is a causal connection between her claims and her employment relationship" with her former employers. 8th Dist. Cuyahoga No. 97623, 2012-Ohio-2210, ¶ 14.

{¶ 36} Unlike the plaintiff in *Schmitt*, Piazza has not alleged that the termination of her employment was itself tortious. But the statement allegedly made by FitzGerald is "relative to" her termination, which is a "matter that arises out of the employment relationship." R.C. 2744.09(B). As the Eighth District stated in this case, "the only relationship between Piazza and the county executive was that of employment." 2017-Ohio-8163, 98 N.E.3d 1263, at ¶ 22. The statement attributed to FitzGerald was directly related to Piazza's performance, her employment with the county, and the county's termination of her employment. Neither Piazza's termination nor FitzGerald's statement explaining why she was terminated could have occurred absent an employment relationship between Piazza and the county. Examining the factual basis of Piazza's claim, we agree with the Eighth District that Piazza's claim is relative to a matter that arises out of her employment relationship with the county.

*Conclusion*

{¶ 37} We hold that there is no temporal limitation in R.C. 2744.09(B) that requires an ongoing employment relationship, either at the time a plaintiff's claim against a political-subdivision employer accrued or at the time the plaintiff filed the claim against her political-subdivision employer. There must, however, be a causal connection between the claim and the plaintiff's employment relationship, whether ongoing or terminated, with the political-subdivision employer. For these reasons,

14

we affirm the Eighth District's judgment affirming the trial court's rejection of the county's assertion of immunity.

Judgment affirmed.

O'CONNOR, C.J., and DONNELLY and FROELICH, JJ., concur.

FISCHER, J., dissents, with an opinion joined by KENNEDY and DEWINE, JJ.

JEFFREY E. FROELICH, J., of the Second Appellate District, sitting for STEWART, J.

_____

**FISCHER, J., dissenting.**

{¶ 38} The majority determines that R.C. 2744.09(B) is ambiguous and holds that the statute does not require a plaintiff to have been employed by the political-subdivision employer at the time the plaintiff filed the lawsuit. Because I would conclude that the statute is unambiguous and thus requires a plaintiff to be an employee of the political subdivision at the time of filing the lawsuit, I respectfully dissent.

**A former employee of a political subdivision is not an "employee" for purposes of R.C. 2744.09(B)**

{¶ 39} The propositions of law we accepted for review in this case address the meaning of R.C. 2744.09(B), which provides:

> This chapter does not apply to, and shall not be construed to apply to, the following:
>
> * * *
>
> (B) Civil actions *by an employee* * * * against his political subdivision relative to any matter that arises out of the employment relationship between the employee and the political subdivision.

15

(Emphasis added.) The issue that we must resolve first is whether appellee, Marcella King Piazza, a former employee of Cuyahoga County at the time she filed the lawsuit in this case, is an "employee" for purposes of R.C. 2744.09(B).

{¶ 40} We determine the General Assembly's intent first by examining the language of the statute. *Stewart v. Vivian*, 151 Ohio St.3d 574, 2017-Ohio-7526, 91 N.E.3d 716, ¶ 24. "When the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no need for this court to apply the rules of statutory interpretation." *Symmes Twp. Bd. of Trustees v. Smyth*, 87 Ohio St.3d 549, 553, 721 N.E.2d 1057 (2000).

{¶ 41} In reviewing the language of the statute, "we may not restrict, constrict, qualify, narrow, enlarge, or abridge the General Assembly's wording." *State ex rel. Carna v. Teays Valley Local School Dist. Bd. of Edn.*, 131 Ohio St.3d 478, 2012-Ohio-1484, 967 N.E.2d 193, ¶ 18. "Instead, we must accord significance and effect *to every word, phrase, sentence, and part of the statute*, and *abstain from inserting* words where words were not placed by the General Assembly." (Citation omitted and emphasis added.) *Id.* When the General Assembly has defined the terms used within the statute, like "employee" in this case, those definitions control when applying the statute. *Terteling Bros. v. Glander*, 151 Ohio St. 236, 85 N.E.2d 379 (1949), paragraph one of the syllabus; *Vivian* at ¶ 25; *Stewart v. Trumbull Cty. Bd. of Elections*, 34 Ohio St.2d 129, 130-131, 296 N.E.2d 676 (1973).

{¶ 42} The majority determines that R.C. 2744.09(B) is ambiguous because the statute does not specify at what point the plaintiff must have been employed by the political subdivision. Reading R.C. 2744.09(B) in a vacuum may support that conclusion, but reviewing the statute in light of the General Assembly's definition of "employee" in R.C. 2744.01(B) compels the opposite conclusion—R.C. 2744.09(B) is unambiguous and applies only if the plaintiff was an employee of the political subdivision at the time the plaintiff filed the lawsuit.

**{¶ 43}** The General Assembly has specifically defined the term "employee" in R.C. 2744.01(B). Thus, that definition is implicit in, and controls in the application of, R.C. 2744.09(B). *Terteling Bros.* at paragraph one of the syllabus. As used in Chapter R.C. 2744, " '[e]mployee' means an officer, agent, employee, or servant, whether or not compensated or full-time or part-time, who *is* authorized to act and *is* acting within the scope of the officer's, agent's, employee's, or servant's employment for a political subdivision." (Emphasis added.) R.C. 2744.01(B). The General Assembly has defined "employee" as an individual who has existing authority to act and who is acting (present tense) within the scope of his or her employment—thus someone who *is* currently employed by the political subdivision. Therefore, when reading R.C. 2744.09(B) ("Civil actions by an employee * * *") with the applicable definition of "employee," it is clear that the plaintiff must be an employee—i.e., a current employee—of the political subdivision when the lawsuit is filed for R.C. 2744.09(B) to apply.

**{¶ 44}** The majority, in holding that R.C. 2744.09(B) does not require an ongoing employment relationship between the plaintiff and the political subdivision, in effect, ignores the General Assembly's definition of "employee" and tacitly inserts language, into either R.C. 2744.01(B) or R.C. 2744.09(B), to permit a former employee to proceed with his or her civil action against a political subdivision under R.C. 2744.09(B). Neither the definition of "employee" provided in R.C. 2744.01(B) nor the language of R.C. 2744.09(B), however, refers to "past," "former," "resigned," or "fired" employees. If the General Assembly had intended to allow political subdivisions to be sued by former employees, the General Assembly could have written "by a current or past employee" into R.C. 2744.09(B) or provided a broader definition of "employee" in R.C. 2744.01(B). It did not. This court has repeatedly instructed that statutes passed by the General Assembly, if clear in their wording, shall not be construed in a manner contrary to the words used and that a court shall not add words to, or delete words from, an unambiguous

statute. *See, e.g.*, *Carna*, 131 Ohio St.3d 478, 2012-Ohio-1484, 967 N.E.2d 193, at ¶ 18. The majority has strayed from those directives.

{¶ 45} I would hold that R.C. 2744.09(B) is unambiguous and conclude, based on the definition of "employee" provided in R.C. 2744.01(B), that a plaintiff must be an employee of the political subdivision at the time of filing the lawsuit for R.C. 2744.09(B) to apply.

**This court's decision in *Vacha* and other appellate courts' decisions do not preclude us from applying the plain language of R.C. 2744.09(B)**

{¶ 46} The majority supports its holding by noting that neither this court nor any other Ohio appellate court has adopted the position that R.C. 2744.09(B) applies only if the plaintiff is still an employee of the political subdivision at the time the plaintiff files the complaint. The majority notes that courts have "repeatedly applied the statute in cases filed after the plaintiff's employment by a political subdivision had ended." Majority opinion at ¶ 28.

{¶ 47} It is true that no appellate court in Ohio has adopted the position that R.C. 2744.09(B) applies only if the plaintiff is still an employee of the political subdivision at the time the plaintiff files the complaint. The majority, however, fails to acknowledge that in this court and in all but one of the courts of appeals, no case has ever squarely presented the issue whether a former employee of the political subdivision is an "employee" for purposes of R.C. 2744.09(B).

{¶ 48} In *Vacha v. N. Ridgeville*, 136 Ohio St.3d 199, 2013-Ohio-3020, 992 N.E.2d 1126, this court may have implicitly assumed, for purposes of deciding other issues relating to the statute, that R.C. 2744.09(B) applies to lawsuits filed by former political-subdivision employees. But we are not bound by that assumption, because the issue whether a former employee is an "employee" for purposes of R.C. 2744.09(B) was not raised as a proposition of law or argued by the parties in that case. *See State v. Bodyke*, 126 Ohio St.3d 266, 2010-Ohio-2424, 933 N.E.2d 753, ¶ 77-78 (O'Donnell, J., concurring in part and dissenting in part). Thus, this court's

decision in *Vacha* does not preclude us from deciding this case based solely on the plain language of the statute.

{¶ 49} The only appellate court that has ever remotely addressed this particular issue is the Eleventh District Court of Appeals in *Fleming v. Ashtabula Area City School Bd. of Edn.*, 11th Dist. Ashtabula No. 2006-A-0030, 2008-Ohio-1892. That court did not conduct a statutory analysis of R.C. 2744.09(B), nor did it refer to the definition of "employee" provided in R.C. 2744.01(B). Instead, the court simply rejected, on policy grounds, the argument that the plaintiff must be an employee of the political subdivision at the time the lawsuit is filed: "To hold otherwise would encourage employers to terminate employees to avoid potential liability when an incident has occurred." *Id.* at ¶ 31. Given *Fleming*'s lack of statutory analysis, this court should not rely on that decision.

## A plain-language application of R.C. 2744.09(B) would not lead to unreasonable consequences

{¶ 50} The majority explains, as further justification of its holding and its rejection of the clear and unambiguous language of R.C. 2744.01(B) and 2744.09(B), that "[r]eading the word 'employee' in R.C. 2744.09(B) as requiring an ongoing employment relationship at the time a plaintiff files an employment-related claim against her political-subdivision employer would give rise to an unreasonable result." Majority opinion at ¶ 29. The majority relies on R.C. 1.47(C), which provides that "[i]n enacting a statute, it is presumed that * * * [a] just and reasonable result is intended." The majority claims that "[i]t is unreasonable to presume that the General Assembly intended to incentivize an employer to terminate an employee who may have an employment-related claim to preserve its entitlement to political-subdivision immunity." *Id.* at ¶ 29.

{¶ 51} Generally, when there is no ambiguity in a statute, this court does not apply any of the rules of statutory construction. *Smyth*, 87 Ohio St.3d at 553, 721 N.E.2d 1057; *United States v. Wiltberger*, 18 U.S. 76, 95-96, 5 L.Ed. 37 (1820).

Because the language of R.C. 2744.09(B) is clear and unambiguous, there is no need to apply the rules of statutory construction. By applying a statutory-construction analysis to R.C. 2744.09(B), a clear and unambiguous statute, the majority invades the role of the legislature to write laws and make policy determinations. *See Jacobson v. Kaforey*, 149 Ohio St.3d 398, 2016-Ohio-8434, 75 N.E.3d 203, ¶ 8. Therefore, I would simply apply the statute as written and hold that a plaintiff must be an employee of the political subdivision at the time of filing the lawsuit for R.C. 2744.09(B) to apply.

{¶ 52} But even assuming arguendo that it is appropriate to consider the rules of statutory construction, including R.C. 1.47(C), when applying a clear and unambiguous statute, the consequences of a plain-language application of R.C. 2744.09(B) are not unreasonable. This court determines, on a case-by-case basis, whether an interpretation of a statute produces unreasonable consequences. *See, e.g., State ex rel. Dispatch Printing Co. v. Wells*, 18 Ohio St.3d 382, 384, 481 N.E.2d 632 (1985). Though this court has previously rejected interpretations of statutes that would lead to unreasonable consequences, we have not yet defined "unreasonable consequence." Generally, "unreasonable" means contrary to reason or sound judgment or beyond the limits of acceptability or fairness. *See Black's Law Dictionary* 1772 (10th Ed.2014). In another context, we have determined that a trial court's decision is unreasonable when there is no sound reasoning process that would support the decision. *AAAA Enterprises, Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

{¶ 53} Despite the lack of a definition of "unreasonable," this court has determined that an interpretation of a statute would produce unreasonable consequences when there would be some type of unintended and serious legal consequence. *See, e.g.*, *Dispatch Printing Co.* at 634 (rejecting an interpretation of the Public Records Act that would allow a provision of a collective-bargaining agreement to take precedence over the act's requirements because that

20

interpretation would have empowered private citizens to alter legal relationships between a government and the public at large through collective-bargaining agreements); *State v. Wells*, 91 Ohio St.3d 32, 34, 740 N.E.2d 1097 (2001) (the statutory term "anal cavity" does not include the victim's buttocks because that interpretation would subject an offender committing only one criminal act to prosecution under two different criminal provisions).

**{¶ 54}** Although there is no established test for determining whether an interpretation of a statute would produce unreasonable consequences, what is clear from the above definition of "unreasonable" and from our case law is that an unreasonable consequence is something more than an undesirable consequence. An unreasonable consequence is one that goes beyond the limits of fairness or that is contrary to reason. And here, the consequence of applying the plain language of R.C. 2744.09(B) is that a political subdivision would be entitled to immunity when a former employee files a civil action against the political subdivision. While this consequence might be undesirable for Piazza and other former employees of political subdivisions, it is not unreasonable, illogical, and/or unfair.

**{¶ 55}** I understand the majority's policy concern that if we applied the plain language of the statute, employers could be encouraged to terminate employees when an incident has occurred in order to avoid potential liability, *see* majority opinion at ¶ 29, citing *Fleming*, 2008-Ohio-1892, at ¶ 31. I do not presume to know the policy considerations of the General Assembly, but I am aware that while there may be undesirable consequences, those consequences might be outweighed by other policy considerations such as limiting the liability of a political subdivision, saving local governments from expending valuable resources, and encouraging current employees to bring actions swiftly.

**{¶ 56}** Here, the General Assembly chose to define the term "employee" in R.C. 2744.01(B), and it chose *not* to include former employees in that definition or to provide a separate provision for former employees in R.C. 2744.09. If the

General Assembly wishes to change the wording of either statute in order to permit a former employee's lawsuit to be covered by R.C. 2744.09(B), the General Assembly may do so. This court does not have that authority. *Kaminski v. Metal & Wire Prods. Co.*, 125 Ohio St.3d 250, 2010-Ohio-1027, 927 N.E.2d 1066, ¶ 61. The General Assembly—not this court—makes policy determinations. *Id.* Therefore, I would conclude that a plain-language application of R.C. 2744.09(B) would not create unreasonable—and certainly would not create absurd—consequences.

**Conclusion**

{¶ 57} R.C. 2744.09(B) is clear and unambiguous. As explained above, this court has never held that a former employee is an "employee" for purposes of R.C. 2744.09(B). Thus, under the particular wording of that statute, a civil action must be brought "by an employee," meaning an employee of the political subdivision at the time of the lawsuit's filing, for R.C. 2744.09(B) to apply. Because Piazza was not an employee of Cuyahoga County at the time she filed the lawsuit, I would conclude that R.C. Chapter 2744's general rule of immunity applies. Since I would hold that Piazza is not an "employee" for purposes of R.C. 2744.09(B), I would not reach the factual question whether her false-light claim is "relative to [a] matter that arises out of the employment relationship," *id.*, between Piazza and the county.

{¶ 58} For the reasons set forth above, I must respectfully dissent.

KENNEDY and DEWINE, JJ., concur in the foregoing opinion.

_____

Schuster & Simmons Co., L.P.A., and Nancy C. Schuster, for appellee.

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Brian R. Gutkoski, Assistant Prosecuting Attorney; Robert J. Triozzi, Cuyahoga County Law Director, and Awatef Assad and Jonathan M. Scandling, Assistant Law Directors, for appellant.

Gwen E. Callender; and Bolek, Besser, Glesius, L.L.C., and Matthew D. Besser, urging affirmance for amici curiae Fraternal Order of Police of Ohio, Inc., and Ohio Employment Lawyers Association.

_____