[Cite as *Barton v. G.E. Baker Constr., Inc.*, 2011-Ohio-5704.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

| | | |
|---|---|---|
| ROSS BARTON, III, et al. | | C.A. No.    10CA009929 |
| Appellants | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| G.E. BAKER CONSTRUCTION | | COURT OF COMMON PLEAS COUNTY OF LORAIN, OHIO |
| Appellee | | CASE No.    08CV158957 |

DECISION AND JOURNAL ENTRY

Dated: November 7, 2011

DICKINSON, Judge.

INTRODUCTION

{¶1} Ross "Buddy" Barton III was injured on a construction site while working for G.E. Baker Construction Inc. Mr. Barton sued G.E. Baker, based on Section 2745.01 of the Ohio Revised Code, the employer intentional tort statute. The trial court granted summary judgment to the construction company, and Mr. Barton has appealed. This Court affirms because there are no genuine issues of material fact and G.E. Baker is entitled to judgment as a matter of law.

BACKGROUND

{¶2} In October 2006, Mr. Barton was working for G.E. Baker installing a water pipe in a trench along State Route 57 in Grafton, Ohio. He was seriously injured when the trench collapsed, burying him up to the shoulders and trapping him for nearly three hours. According to Mr. Barton, the trench was over five feet deep and the soil was wet. He has argued that a trench box would have prevented his injuries.

{¶3} A trench box or shield is a large metal device designed to secure the sides of a trench in order to protect people working inside it. Trench boxes are heavy metal devices that must be moved with an equipment loader. According to witnesses, G.E. Baker had a trench box available nearby, but was not using it at the time of the collapse.

{¶4} Mr. Barton testified that Glen Baker, the owner of G.E. Baker, had previously threatened him, on approximately six separate occasions, regarding the use of trench boxes. According to Mr. Barton, Mr. Baker warned him that, "if I ever ask for a box when we didn't need one or if I did not go down in a hole that I was instructed to go down into that he would find somebody that would." He understood Mr. Baker's comments to mean that Mr. Barton would be fired if he insisted on using a trench box for safety. Despite the threats, Mr. Barton testified that he had asked for a trench box when working on previous jobs. He said that G.E. Baker supplied a trench box for him one or two times out of approximately six times that he requested one prior to the job on Route 57.

{¶5} Mr. Barton testified that, two or three days before he was hurt, he asked his supervisor, Matthew Shriver, if he could use a trench box, but, due to time constraints, Mr. Shriver would not allow it. According to Mr. Barton, when he asked Mr. Shriver for a trench box, he refused, saying "if Glenn [Baker] knew we were using a box on this and taking that much time he would fire [me]."

{¶6} Mr. Barton presented evidence that applicable federal, state, and industry standards required employers to protect employees working in trenches more than five feet deep by using a trench box or a sloping process called benching. Although G.E. Baker's witnesses agreed that the relevant part of the trench was more than five feet deep at the time of the collapse, they testified that the walls had been properly benched. Mr. Barton, on the other hand,

testified that the trench had not been benched. The Occupational Safety and Health Administration cited G.E. Baker for violating 29 C.F.R. 1926.652(a)(1) in relation to this incident, finding that it had not used a trench box or benching to protect its employees. Mr. Shriver testified that, contrary to safety standards, he did not inspect the trench for stability on the morning of the collapse. The evidence indicated that, before Mr. Barton was injured, employees had previously witnessed management cutting corners on safety, including failing to use a trench box when the situation required one. There was also evidence that, prior to Mr. Barton's injury, two other G.E. Baker employees were injured while working in trenches. There was no evidence, however, that G.E. Baker's management acted with intent to injure anyone. In fact, Mr. Barton testified that he did not believe anyone had intentionally tried to hurt him.

### THE EMPLOYER INTENTIONAL TORT STATUTE

{¶7} Mr. Barton's assignment of error is that the trial court incorrectly granted summary judgment to G.E. Baker. Under Ohio law, employees injured in the workplace are generally limited to the remedy provided by the Workers' Compensation Act. R.C. 4123.74. In limited circumstances, however, an employee may bring a claim against his employer for an intentional tort under Section 2745.01 of the Ohio Revised Code. In order to prove an employer intentional tort claim, the employee must prove "that the employer committed the tortious act with the intent to injure another or with the belief that the injury was substantially certain to occur." R.C. 2745.01(A). As used in the statute, "'substantially certain' means that an employer acts with deliberate intent to cause an employee to suffer an injury, a disease, a condition, or death." R.C. 2745.01(B). The Ohio Supreme Court has held that the General Assembly's intent in enacting Section 2745.01 "is to permit recovery for employer intentional torts only when an

employer acts with specific intent to cause an injury[.]" *Kaminski v. Metal & Wire Prods. Co.*, 125 Ohio St. 3d 250, 2010-Ohio-1027, at ¶56.

{¶8}   Last year, the Ohio Supreme Court upheld the constitutionality of the newest incarnation of Section 2745.01, effective April 2005. *Kaminski v. Metal & Wire Prods. Co.*, 125 Ohio St. 3d 250, 2010-Ohio-1027, at syllabus.   In his dissenting opinion in *Kaminski*, Justice Pfeifer wrote that, under the statute, "in order to prove an intentional tort[,] . . . the employee . . . must prove, at a minimum, that the actions of the employer amount to criminal assault." *Id.* at ¶116 (Pfeifer, J., dissenting) (quoting *Johnson v. BP Chemicals Inc.*, 85 Ohio St. 3d 298, 306 (1999)).   In this case, the trial court agreed with that assessment.   The trial court wrote that, based on *Kaminski*, "it is uncertain how anything less than criminal misconduct can ever rise to th[e] level [required by Section 2745.01 to prove an employer intentional tort]."   The trial court determined there was no genuine issue of material fact regarding whether G.E. Baker's actions rose to that level and, therefore, granted it summary judgment.

{¶9}   On appeal, Mr. Barton has argued that his employer's failure to use a trench box to protect its workers created a rebuttable presumption of the intent to injure as contemplated by the exception in Section 2745.01(C).   Under that subsection, "[d]eliberate removal by an employer of an equipment safety guard . . . creates a rebuttable presumption that the removal . . . was committed with intent to injure another if an injury or an occupational disease or condition occurs as a direct result." R.C. 2745.01(C).   Mr. Barton has argued that G.E. Baker deliberately removed "an equipment safety guard" by not continuing to use the trench box as workers progressed down the length of the trench.

{¶10}  The General Assembly did not define the term "equipment safety guard" as used in Section 2745.01.   "In the absence of clear legislative intent to the contrary, words and phrases

in a statute shall be read in context and construed according to their plain, ordinary meaning." *Fickle v. Conversion Techs. Int'l Inc.*, 6th Dist. No. WM-10-016, 2011-Ohio-2960, at ¶29 (quoting *Kunkler v. Goodyear Tire & Rubber Co.*, 36 Ohio St. 3d 135, 137 (1988)). "[E]quipment" is defined as "the implements (as machinery or tools) used in an operation or activity[.]" Webster's Third New Int'l Dictionary 768 (1993). "[S]afety" is defined as "the condition of being safe: freedom from exposure to danger: exemption from hurt, injury, or loss[.]" *Id.* at 1998. A "guard" is "a fixture or attachment designed to protect or secure against injury . . . ." *Id.* at 1007.

{¶11} From these common dictionary definitions, it becomes apparent that not all workplace safety devices are "equipment safety guards" as that term is used in Section 2745.01. See *Fickle v. Conversion Techs. Int'l Inc.*, 6th Dist. No. WM-10-016, 2011-Ohio-2960, at ¶42. "[A]s used in R.C. 2745.01(C), an 'equipment safety guard' would be commonly understood to mean a device that is designed to shield the operator from exposure to or injury by a dangerous aspect of the equipment." *Id.* at ¶43. In this case, the trench box is not an "equipment safety guard" under Section 2745.01(C) because it is designed to protect workers from trench collapse. A trench is not a piece of equipment and the trench box is not designed to protect the operator of any piece of equipment. Therefore, Section 2745.01(C) does not apply, and G.E. Baker's failure to use a trench box to protect its workers from the danger of trench collapse does not create a rebuttable presumption of intent to injure under the employer intentional tort statute. Mr. Barton's assignment of error is overruled.

{¶12} Construing the evidence in a light most favorable to Mr. Barton, we assume that the trench was more than five feet deep, the walls of the trench were not benched, the soil was wet, Mr. Barton asked for a trench box, and G.E. Baker violated applicable regulations by

refusing to provide it. Even so, under Section 2745.01 of the Ohio Revised Code, there is no genuine issue of material fact regarding whether G.E. Baker committed a tortious act with the intent to injure an employee or whether it acted with deliberate intent to cause an employee to suffer an injury. R.C. 2745.01(A)-(B). G.E. Baker is entitled to judgment as a matter of law.

CONCLUSION

**{¶13}** There is no genuine issue of material fact, and G.E. Baker is entitled to judgment as a matter of law. The judgment of the Lorain County Common Pleas Court is affirmed.

Judgment affirmed.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellants.

CLAIR E. DICKINSON
FOR THE COURT

BELFANCE, P. J.
WHITMORE, J.
CONCUR

APPEARANCES:

R. CRAIG MCLAUGHLIN and PETER D. TRASKA, Attorneys at Law, for Appellant.

SHANNON M. FOGARTY, Attorney at Law, for Appellee.