[Cite as *Schiemann v. Foti Contracting, L.L.C.*, 2013-Ohio-269.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 98662

---

# ROBERT SCHIEMANN, ET AL.

### PLAINTIFFS-APPELLANTS

vs.

# FOTI CONTRACTING, L.L.C., ET AL.

### DEFENDANTS-APPELLEES

---

### JUDGMENT:
### AFFIRMED

---

Civil Appeal from the
Cuyahoga County Common Pleas Court
Case No. CV-730877

**BEFORE:** Blackmon, J., Stewart, A.J., and Jones, J.

**RELEASED AND JOURNALIZED:** January 31, 2013

**ATTORNEYS FOR APPELLANTS**

Stephen S. Vanek
Jeffrey H. Friedman
Friedman, Domiano & Smith Co.
55 Public Square, Suite 1055
Cleveland, OH 44113

David R. Grant
Plevin & Gallucci Company, L.P.A.
55 Public Square, Suite 2222
Cleveland, OH 44113


**ATTORNEYS FOR APPELLEE**

Jan L. Roller
Megan D. Stricker
Davis & Young
1200 Fifth Third Center
600 Superior Avenue, E.
Cleveland, OH 44114

PATRICIA ANN BLACKMON, J.:

**{¶1}** Appellants Robert Schiemann and Joana Schiemann ("the Schiemanns") appeal from the trial court's granting of summary judgment in favor of appellee Foti Contracting, L.L.C. ("Foti").[1] They assign the following error for our review:

**The trial court erred when it granted summary judgment in favor of Appellee Foti Contracting, L.L.C.**

**{¶2}** Having reviewed the record and pertinent law, we affirm the trial court's judgment. The apposite facts follow.

## Facts

**{¶3}** Robert Schiemann was employed by Foti intermittently since 1993. Foti is an independent subcontractor of Panzica Construction Company ("Panzica"). Panzica had hired Foti to provide masonry services at a project located at 1211 St. Clair Avenue in Cleveland, Ohio. On July 8, 2008, Schiemann was working with the stone masons who were laying stone on the exterior of a building. His duties included raising the scaffold's work platform on which the masons stood to perform their work. Schiemann was working 18 feet above the ground, raising the platform from the third to the fourth level when he lost his balance and fell forward through the approximately three-foot gap between the front of the scaffold and the face of the building and sustained injuries.

**{¶4}** On July 2, 2010, the Schiemanns filed an employer intentional tort lawsuit against Foti pursuant to R.C. 2745.01(A) and (C).[2] They contended that an intentional

---

[1]The Schiemanns' complaint originally also included Panzica Construction, but the Schiemanns later voluntarily dismissed Panzica from the case without prejudice.

tort occurred because Foti did not provide Schiemann with a safety harness and the scaffolding lacked a guardrail in the area facing the building and side rails to prevent Schiemann from falling.

{¶5} Foti filed a motion for summary judgment in which it argued that it did not have the requisite deliberate intent necessary for a successful intentional tort claim. It argued that it provided intensive safety training to its employees regarding the erection of scaffolds in the form of written materials and videos. Foti also conducted weekly "toolbox safety talks" at which fall prevention was a topic that was covered.

{¶6} Schiemann also stated in his deposition that he had also participated in classes conducted by Foti regarding the correct way to erect scaffolding. Foti also sent him to a four hour safety seminar on the erection of scaffolding conducted by OSHA. Schiemann had erected scaffolding "many times" before the accident without using a safety harness. He stated that he would not have used a harness even if one had been offered because he felt it was not needed to complete his job safely. He testified that in his experience in the industry, he did not recall ever seeing an employee of Foti's or other contractors wearing a harness when erecting scaffolding. He also admitted that if he asked for a harness, Foti would have provided one.

{¶7} The Schiemanns opposed the motion arguing that the intentional tort statute has two levels of intent: one that requires the employer to have a "deliberate intent" to

---

[2]The Schiemanns also alleged a claim for loss of consortium on behalf of Joana.

injure, and one that only required that the employer have an "intent to injure." They argued that the evidence met the lower standard of "intent to injure" because Foti failed to abide by OSHA's requirement that fall protection and guardrails be provided to Schiemann.

{¶8} In an eight-page opinion, the trial court entered summary judgment in favor of Foti. The court noted that Schiemann admitted in his deposition that if he desired a harness, Foti would have provided one for him. The court also found that although "Foti did not strictly require employees to wear fall protection gear, its actions do not rise to the level required for recovery under Ohio's employer intentional tort statute." The court also concluded that Foti did not specifically direct Schiemann to perform his job in a dangerous way.

## Motion for Summary Judgment

{¶9} In their sole assigned error, the Schiemanns argue that the trial court erred by granting summary judgment under the intentional tort statute.

{¶10} We review an appeal from summary judgment under a de novo standard of review. *Baiko v. Mays*, 140 Ohio App.3d 1, 746 N.E.2d 618 (8th Dist.2000), citing *Smiddy v. The Wedding Party, Inc.*, 30 Ohio St.3d 35, 506 N.E.2d 212 (1987); *N.E. Ohio Apt. Assn. v. Cuyahoga Cty. Bd. of Commrs.*, 121 Ohio App.3d 188, 699 N.E.2d 534 (8th Dist.1997). Accordingly, we afford no deference to the trial court's decision and independently review the record to determine whether summary judgment is appropriate. Under Civ.R. 56, summary judgment is appropriate when: (1) no genuine issue as to any

material fact exists, (2) the party moving for summary judgment is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can reach only one conclusion that is adverse to the nonmoving party. We conclude the trial court did not err by granting summary judgment as a matter of law in favor of Foti.

{¶11} A cause of action for an employer intentional tort is governed by R.C. 2745.01, enacted in 2005, which provides:

**(A) In an action brought against an employer by an employee \* \* \* for damages resulting from an intentional tort committed by the employer during the course of employment, the employer shall not be liable unless the plaintiff proves that the employer committed the tortious act with the intent to injure another or with the belief that the injury was substantially certain to occur.**

**(B) As used in this section, "substantially certain" means that an employer acts with deliberate intent to cause an employee to suffer an injury, a disease, a condition, or death.**

**(C) Deliberate removal by an employer of an equipment safety guard or deliberate misrepresentation of a toxic or hazardous substance creates a rebuttable presumption that the removal or misrepresentation was committed with intent to injure another if an injury or an occupational disease or condition occurs as a direct result.**

{¶12} The Ohio Supreme Court in *Stetter v. R.J. Corman Detailment Servs., L.L.C.*, 125 Ohio St.3d 280, 2010-Ohio-1029, N.E.2d 1092, stated that the Ohio General Assembly, in enacting R.C. 2745.01, as expressed particularly in subsection (B), meant to "significantly curtail an employee's access to common-law damages" and "permit

recovery for employer intentional torts *only* when an employer acts with specific intent to cause injury." *Id.* at 284. (Emphasis in original.)

{¶13} Schiemann relies on this court's opinions in *Houdek v. ThyssenKrupp Materials*, 8th Dist. No. 95399, 2011-Ohio-1694, and *Hewitt v. The L.E. Myers Co.*, 8th Dist. No. 96138, 2011-Ohio-2960, in arguing summary judgment was improperly granted. However, both cases have been recently reversed by the Ohio Supreme Court.

{¶14} In *Houdek,* this court concluded that the new intentional tort statute created two types of intent: "intent to injure" and "deliberate intent to injure." We held that the employer could be found liable for an employee's injuries under the "intent to injure" standard, if it "objectively believed the injury [to the employee] was substantially certain to occur," even if there was a lack of proof of deliberate intent to injure. *Houdek* at ¶ 46. We concluded that the legislature committed a "scrivener's error" by defining "substantially certain" in section (B) to mean "deliberate intent" because the terms are not synonymous and are in "a state of harmonic dissonance." *Id.* at ¶ 42.

{¶15} The Ohio Supreme Court disagreed and reversed our decision. *Houdek v. Thyssen Krupp Materials*, Slip Opinion No. 2012-Ohio-5685. The Ohio Supreme Court held that the statute requires one intent: that the employer have a deliberate intent to injure the employer. The court explained as follows:

> **[I]n *Stetter*, we observed that "R.C. 2745.01 embodies the General Assembly's intent to significantly curtail an employee's access to common-law damages for what we will call a 'substantially certain' employer intentional tort."** *Stetter* **at ¶ 27.**

**It is therefore manifest that R.C. 2745.01(B) is not the result of a scrivener's error. As we stated in both *Kaminski* and *Stetter*, the General Assembly intended to limit claims for employer intentional torts to situations in which an employer acts with the "specific intent" to cause an injury to another. *Kaminski* at ¶ 26; *See also 6 Larson's Workers' Compensation Law*, Section 103.03, 103-7 to 103-8 (2001) (explaining that an employer's "knowingly permitting a hazardous work condition to exists [and] knowingly ordering employees to perform an extremely dangerous job * * * falls short of the kind of actual intention to injure that robs the injury of accidental character." (footnotes omitted).**

**In accord with this authority, absent a deliberate intent to injure another, an employer is not liable for a claim alleging an employer intentional tort, and the injured employee's exclusive remedy is within the workers' compensation system.** *Id.* at ¶ 23-25.

**{¶16}** The court further explained that R.C. 2745.01 appears to harmonize the intentional tort law of Ohio with that of the majority of jurisdictions and quoting 6 Larson's Workers' Compensation Law Section 103.03 (2008) stated:

**[T]he common-law liability of the employer cannot, under the almost unanimous rule, be stretched to include accidental injuries caused by gross, wanton, wilful, deliberate, intentional, reckless, culpable, or malicious negligence, breach of statute, or other misconduct of the employer short of a conscious and deliberate intent directed to the purpose of inflicting injury.** *Houdek* at ¶ 23.

**{¶17}** Thus, it appears under current Ohio law, that without showing evidence of a history of animosity or ill-will between the employer and employee that would support evidence of a subjective intent by the employer to injure the employee, an intentional tort claim will not lie. The evidence does not support such a conclusion. Foti held weekly safety talks and conducted classes on the erection of scaffolding and provided written

materials and videos to employees on fall safety. Foti also sent Schiemann to a four hour OSHA safety seminar regarding fall hazards. These actions show Foti was proactive about the employee's safety in erecting scaffolding and that it wanted to prevent injuries from occurring.

{¶18} Although the safety harnesses were removed from the construction site a day before the accident, Schiemann admitted that if he had asked for a harness, Foti would have provided him with one. Moreover, Schiemann admitted that even if the harnesses were on the construction site, he would not have worn one because he had never worn one before when erecting scaffolding and, in fact, did not believe one was necessary to complete his job safely.

{¶19} Additionally, no one had ever fallen or been injured on Foti's job sites while performing the task that Schiemann was performing before his fall. Foti crew members testified that raising the platforms is more dangerous if it is done while wearing a safety harness because the harness gets in the way causing tripping hazards. In fact, Foti personnel believed it was safer to not wear a safety harness while performing the task in question. Therefore, based on these facts, we cannot say Foti had the deliberate intent to injure Schiemann.

{¶20} Schiemann also relies on our case in *Hewitt* to contend that the trial court erred by granting summary judgment on his claim pursuant to R.C. 2745.01(C). Subsection (C) concerns the removal of safety guards. Schiemann argues that the safety harness and guardrail constitute "safety guards" under the statute.

**{¶21}** *Hewitt* was also recently reversed by the Ohio Supreme Court. *Hewitt v. L.E. Myers Co.*, Slip Opinion No. 2012-Ohio-5317. The Ohio Supreme Court in *Hewitt* held that:

> **As used in R.C. 2745.01(C), "equipment safety guard" means a device designed to shield the operator from exposure to or injury by a dangerous aspect of the equipment, and the "deliberate removal" of an equipment safety guard occurs when an employer makes a deliberate decision to lift, push aside, take off, or otherwise eliminate that guard.**

**{¶22}** The *Hewitt* Court concluded that the employer was not liable for failing to provide rubber gloves to an employee working on electrical lines. In construing the statute, the court defined "safety guard" by using the plain meaning of the words. In doing so, the court concluded that "safety guard" did not include all devices designed to prevent injury, but includes only devices on equipment designed to shield the operator from exposure or injury by the equipment. The court explained:

> **To construe "equipment safety guard" to include any generic safety-related item ignores not only the meaning of the words used but also the General Assembly's intent to restrict liability for intentional torts. As the Ninth District observed in *Barton v. G.E. Baker Constr.*, 2011-Ohio-5704, ¶ 11, "[f]rom these common dictionary definitions, it becomes apparent that not all workplace safety devices are 'equipment safety guards' as that term is used in Section 2745.01(C).**
>
> **A broad interpretation of the phrase does not comport with the General Assembly's efforts to restrict liability for intentional tort by authorizing recovery "only when an employer acts with specific intent." *Stetter v. R.J. Corman Derailment Servs., LLC*, 125 Ohio St. 3d 280, 2010-Ohio-1029, 927 N.E.2d 1092, ¶ 26; *Kaminski v. Metal & Wire Prods. Co.*, 125 Ohio St. 3d 250, 2010-Ohio-1027, 927 N.E.2d 1066, ¶ 56.**

As we explained in *Kaminski*, the statutory restriction of intentional-tort liability "is supported by the history of employer intentional-tort litigation in Ohio and by a comparison of the current statute to previous statutory attempts." *Id.* ¶ 57. It is not our role to second-guess the policy matters set by the General Assembly. *Stetter* at ¶ 35. Consequently, we refrain from expanding the scope of the rebuttable presumption of intent in R.C. 2745.01(C).

Free-standing items that serve as physical barriers between the employee and potential exposure to injury, such as rubber gloves and sleeves, are not "an equipment safety guard" for purposes of R.C. 2745.01(C). Instead, rubber gloves and sleeves are personal protective items that the employee controls. We adopt the definition in *Fickle* and hold that as used in R.C. 2745.01(C), "equipment safety guard" means "a device that is designed to shield the operator from exposure to or injury by a dangerous aspect of the equipment." *Fickle*, ¶ 43. *Id.* at ¶ 24 and 25.

{¶23} Our reading of *Hewitt* leads us to conclude that the Schiemanns' case is not a subsection (C) case. In fact, Schiemann admitted if he requested a harness, one would have been provided and that he would not have worn a safety harness even if provided. The harness is more akin to the rubber gloves in *Hewitt* in that it was under the employee's control whether to use one or not.

{¶24} The fact that the scaffolding failed to have a midlevel guardrail on the area facing the building and did not have side rails also does not create a subsection (C) case. There is no evidence that the scaffolding ever had a guardrail or side rails that were removed by Foti. Moreover, the Ohio Supreme Court has held that the violation of an OSHA regulation does not in itself create an intentional tort. *Hernandez v. Martin Chevrolet, Inc.*, 72 Ohio St.3d 302, 303, 1995-Ohio-200, 649 N.E.2d 1215. In *Hernandez*, the Supreme Court held, "Congress did not intend OSHA to affect the duties

of employers owed to those injured during the course of their employment." Thus, any OSHA violations do not factor into the determination of whether Foti acted with deliberate intent to harm Schiemann. *Id*.; *see also Hristovski v. The Bard Mfg. Co.*, 6th Dist. No. WM-03-022, 2004-Ohio-3984, ¶ 13. Accordingly, based on the recent case law handed down from the Ohio Supreme Court, the Schiemanns' sole assigned error is without merit and is overruled.

{¶25} Judgment affirmed.

It is ordered that appellees recover from appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

PATRICIA ANN BLACKMON, JUDGE

MELODY J. STEWART, A.J., and
LARRY A. JONES, SR., J., CONCUR