[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Bliss v. Johns Manville*, Slip Opinion No. 2022-Ohio-4366.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2022-OHIO-4366

BLISS, EXR., APPELLANT, *v*. JOHNS MANVILLE, APPELLEE.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Bliss v. Johns Manville*, Slip Opinion No. 2022-Ohio-4366.]

*Employer intentional-tort liability—R.C. 2745.01—Summary judgment—When reviewing a trial court's denial of summary judgment in cases in which a jury ultimately reached a verdict in the nonmoving party's favor, an appellate court must construe the evidence before it most strongly in favor of the nonmoving party when applying the relevant law—Court of appeals' judgment affirmed.*

(No. 2021-0800—Submitted May 11, 2022—Decided December 8, 2022.)

APPEAL from the Court of Appeals for Lucas County, No. L-20-1091, 2021-Ohio-1673.

_____

**FISCHER, J.**

{¶ 1} In this case, we are asked to address how an appellate court should review a trial court's decision to deny summary judgment in a case in which a jury ultimately reached a verdict in the nonmoving party's favor. We reaffirm that in conducting its de novo review of a trial court's decision to deny summary judgment, an appellate court must construe the evidence before it most strongly in favor of the nonmoving party when applying the relevant law. Because the Sixth District Court of Appeals did not err in its review below, we affirm the decision of that court.

## FACTUAL AND PROCEDURAL BACKGROUND

{¶ 2} The appellant in this case is Darlene L. Bliss as executor of the estate of her deceased husband, Robert A. Bliss.[1] Robert Bliss, a former employee of appellee, the manufacturing company Johns Manville, was allegedly injured while operating a machine on the job. Bliss filed a lawsuit alleging that Johns Manville intentionally caused the injury in violation of R.C. 2745.01. Specifically, Bliss alleged that either, sometime prior to his injury, Johns Manville removed bolts to an access window on the machine or that Johns Manville had never bolted the access window—which ultimately led to Bliss's injury.

{¶ 3} Johns Manville filed a motion for summary judgment in which it alleged that Bliss's evidence did not establish that Johns Manville had acted with the requisite deliberate intent to injure another under R.C. 2745.01. Bliss filed a response supported by an affidavit of his expert, Gerald Rennell. In its response, Johns Manville moved to strike the affidavit of Rennell. The trial court denied the motion to strike the affidavit. Noting that Bliss had filed an expert affidavit, the

_____

1. After the oral argument in this case, counsel for Bliss filed a suggestion of death notifying this court that Robert Bliss had passed away. Counsel stated that Bliss's wife, who was also a plaintiff in the original complaint, intends to prosecute the case on behalf of Bliss's estate in an effort to reinstate the jury verdict. We subsequently granted a motion for substitution of party, substituting Darlene Bliss as executor of the estate of Robert Bliss for Robert Bliss as appellant. ___ Ohio St.3d ___, 2022-Ohio-3637, __ N.E.3d ___. For ease of discussion, we will refer to the appellant as "Bliss" in this opinion.

trial court concluded that Johns Manville had failed to show that there were no genuine issues of material fact and denied the motion for summary judgment.

{¶ 4} At the conclusion of the trial, the jury found in favor of Bliss.

{¶ 5} On appeal, Johns Manville raised eight assignments of error, including challenges to the trial court's decision to deny the motion to strike Rennell's affidavit and the trial court's decision denying Johns Manville's motion for summary judgment. 2021-Ohio-1673, 172 N.E.3d 1146, ¶ 14. In a unanimous decision, the Sixth District reversed and entered judgment in Johns Manville's favor. *Id*. at ¶ 47.

{¶ 6} In its analysis, the Sixth District first concluded that the trial court abused its discretion in failing to strike Rennell's affidavit. *Id*. at ¶ 22. It reasoned that the affidavit comprised legal conclusions regarding statutory terms and was accordingly impermissible. *Id.*

{¶ 7} The Sixth District then proceeded to address whether the trial court erred in denying Johns Manville's motion for summary judgment. *Id.* at ¶ 24. The court noted that in denying the motion for summary judgment, the trial court did not conclude as a matter of law that the access window was an equipment safety guard. *Id*. at ¶ 7. The Sixth District held, as a matter of law, that the equipment at issue in this case did not constitute an "equipment safety guard" under R.C. 2745.01. 2021-Ohio-1673 at ¶ 37. Without the affidavit, the court concluded, Bliss presented no evidence of an "equipment safety guard" and, accordingly, Bliss was not entitled to the presumption that removal of an equipment safety guard was committed with an intent to injure. *Id*. at ¶ 39-40. The court then concluded that while Johns Manville's actions may constitute negligence, there was no evidence presented in this case that Johns Manville intended to injure Bliss. *Id*. at ¶ 44.

{¶ 8} The Sixth District accordingly concluded that summary judgment should have been granted in Johns Manville's favor and that the case should not have been given to the jury. 2021-Ohio-1673, 172 N.E.3d 1146, at ¶ 45. It reversed

the trial court's decision and concluded that Johns Manville's remaining assignments of error (which challenged various aspects of the trial proceedings) were moot. *Id*. at ¶ 46.

{¶ 9} This court accepted jurisdiction over the first proposition of law in Bliss's appeal: "Following a favorable verdict based on a full record, de novo review of a trial court's decision to deny summary judgment cannot include weighing the evidence against the non-moving party, overlooking evidence, and misapplying legal definitions created by the Supreme Court." *See* 164 Ohio St.3d 1440, 2021-Ohio-3233, 173 N.E.3d 1228.

## ANALYSIS

{¶ 10} Bliss argues that the Sixth District "misapplied controlling authority" and erred in vacating the jury's verdict and concluding that Johns Manville should be granted summary judgment. He asserts that the Sixth District's decision should not be allowed to stand and that this court's intervention is necessary to prevent courts from following the court of appeals' analysis in the future. Bliss further asks this court to "clarify" when expert testimony on factual issues is appropriate in employer-intentional-tort cases.

{¶ 11} Johns Manville responds that the Sixth District correctly analyzed the facts of this case under the settled law and that this court should accordingly affirm the Sixth District's decision.

{¶ 12} Appellate courts review the denial of a motion for summary judgment de novo, governed by the standards of Civ.R. 56. *Piazza v. Cuyahoga Cty*., 157 Ohio St.3d 497, 2019-Ohio-2499, 138 N.E.3d 1108, ¶ 14, citing *Vacha v. N. Ridgeville*, 136 Ohio St.3d 199, 2013-Ohio-3020, 992 N.E.2d 1126, ¶ 19, citing *Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, ¶ 8. "Civ.R. 56(C) provides that summary judgment shall be granted when the filings in the action, including depositions and affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a

matter of law." *Bonacorsi v. Wheeling & Lake Erie Ry. Co.*, 95 Ohio St.3d 314, 2002-Ohio-2220, 767 N.E.2d 707, ¶ 24.

{¶ 13} In reviewing a motion for summary judgment, the evidence must be construed most strongly in favor of the nonmoving party. *See Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66-67, 375 N.E.2d 46 (1978). It is axiomatic that in construing evidence most strongly in favor of the nonmoving party, a court may not ignore evidence in that party's favor. And a court may not misapply legal definitions set forth by this court, as courts have no discretion to make errors of law, *see Johnson v. Abdullah*, 166 Ohio St.3d 427, 2021-Ohio-3304, 187 N.E.3d 463, ¶ 39.

{¶ 14} It is also clear that appellate courts may review a trial court's denial of a motion for summary judgment after an adverse final judgment has been rendered in a case: "A trial court's denial of a motion for summary judgment is reviewable on appeal by the movant from a subsequent adverse final judgment." *Balson v. Dodds*, 62 Ohio St.2d 287, 405 N.E.2d 293 (1980), paragraph one of the syllabus. While any error in the denial of a motion for summary judgment will often be rendered moot or harmless when the trial proceedings show that there were genuine issues of material fact supporting a judgment in favor of the party against whom the motion for summary judgment was made, this court has noted that the denial of a motion for summary judgment is not harmless when the denial was predicated on a pure question of law, *see Continental Ins. Co. v. Whittington*, 71 Ohio St.3d 150, 158, 642 N.E.2d 615 (1994).

{¶ 15} Having reaffirmed these basic legal principles, we proceed to analyze whether the Sixth District correctly applied them in this case. We conclude that it did.

{¶ 16} The critical issues in this case are whether the machine's access window constituted an "equipment safety guard" under R.C. 2745.01(C) and whether Johns Manville intended to injure Bliss under R.C. 2745.01(A). The Sixth

District did not err in concluding that the access window did not constitute an "equipment safety guard" and that there was no evidence of an intent to injure Bliss. *See* 2021-Ohio-1673, 172 N.E.3d 1146, at ¶ 45.

{¶ 17} Under R.C. 2745.01(A), an employer shall not be liable for an intentional tort "unless the plaintiff proves that the employer committed the tortious act with the intent to injure another or with the belief that the injury was substantially certain to occur." The General Assembly specified that the phrase "substantially certain," as used in R.C. 2745.01, "means that an employer acts with deliberate intent to cause an employee to suffer an injury, a disease, a condition, or death." R.C. 2745.01(B). Thus, in order for Bliss to prevail, he had to show that Johns Manville committed the allegedly tortious act either with the intent to injure another or with a deliberate intent to cause an employee to suffer an injury, a disease, a condition, or death. As this court has previously stated, "absent a deliberate intent to injure another, an employer is not liable for a claim alleging an employer intentional tort." *Houdek v. ThyssenKrupp Materials N.A., Inc.*, 134 Ohio St.3d 491, 2012-Ohio-5685, 983 N.E.2d 1253, ¶ 25. R.C. 2745.01(C) provides that the deliberate removal of an "equipment safety guard" creates a rebuttable presumption that the employer acted with such intent.

{¶ 18} Significantly, much of the Sixth District's analysis was premised on its conclusion that the trial court abused its discretion in denying Johns Manville's motion to strike the affidavit of Bliss's expert, in which the expert opined that Johns Manville deliberately removed a safety guard. *See* 2021-Ohio-1673 at ¶ 22. Bliss argues that we should "clarify" when expert testimony is appropriate in cases like this; however, this argument—and any other arguments regarding the admissibility of the expert report—are beyond the scope of the proposition of law we accepted for review in this appeal. For purposes of our analysis here, we must accept the conclusion of the Sixth District regarding the admissibility of the expert affidavit.

**{¶ 19}** Without the expert affidavit, Bliss failed to offer any evidence that the access window was an "equipment safety guard" under R.C. 2745.01(C). Bliss had the burden of production, and he simply failed to produce any evidence to support his assertions. For example, while Bliss cited to a Johns Manville PowerPoint presentation terming the access window a "guard," Johns Manville's use of the generic term "guard," standing alone, fails to provide any support for a conclusion that the access window is an "equipment safety guard" under R.C. 2745.01(C). The Sixth District correctly analyzed the issue and concluded that Johns Manville was entitled to summary judgment on the issue whether the access window constituted an "equipment safety guard," and that Bliss accordingly was not entitled to the rebuttable presumption of intent under R.C. 2745.01(C).

**{¶ 20}** The Sixth District also correctly concluded that there was no evidence that Johns Manville intended to injure Bliss. As the Sixth District explained, the facts of this case indicate that Johns Manville may have been negligent, but such negligent conduct does not support an intentional-tort claim. 2021-Ohio-1673, 172 N.E.3d 1146, at ¶ 44, citing *Stetter v. R.J. Corman Derailment Servs., L.L.C.*, 125 Ohio St.3d 280, 2010-Ohio-1029, 927 N.E.2d 1092, ¶ 66. Without any evidence of an intent to injure, Bliss's claim fails and Johns Manville is not liable under R.C. 2745.01.

**{¶ 21}** For these reasons, the Sixth District's decision to reverse the trial court's judgment was correct, given that the trial court's denial of summary judgment was predicated on an erroneous legal determination. *See Whittington*, 71 Ohio St.3d at 158, 642 N.E.2d 615.

## CONCLUSION

**{¶ 22}** When reviewing a trial court's decision to deny summary judgment in cases in which a jury ultimately reached a verdict in the nonmoving party's favor, an appellate court must construe the evidence before it most strongly in favor of the nonmoving party when applying the relevant law. In this case, the Sixth District

did not err in applying the relevant law when reviewing Johns Manville's motion for summary judgment. We accordingly affirm the decision of the Sixth District Court of Appeals.

Judgment affirmed.

O'CONNOR, C.J., and KENNEDY and DEWINE, JJ., concur.

DONNELLY, J., would dismiss the appeal as having been improvidently accepted because the majority opinion merely reaffirms well-settled law.

STEWART, J., dissents, with an opinion joined by BRUNNER, J.

_____

**STEWART, J., dissenting.**

**{¶ 23}** While I agree with the law set forth in the majority opinion, I disagree with its conclusion that the Sixth District Court of Appeals correctly applied that law in this case. I therefore respectfully dissent.

**{¶ 24}** The majority states:

Significantly, much of the Sixth District's analysis was premised on its conclusion that the trial court abused its discretion in denying [appellee] Johns Manville's motion to strike the affidavit of [appellant John] Bliss's expert, in which the expert opined that Johns Manville deliberately removed a safety guard. *See* 2021-Ohio-1673[, 172 N.E.3d 1146,] ¶ 22. Bliss argues that we should "clarify" when expert testimony is appropriate in cases like this; however, this argument—and any other arguments regarding the admissibility of the expert report—are beyond the scope of the proposition of law we accepted for review in this appeal. For purposes of our analysis here, we must accept the conclusion of the Sixth District regarding the admissibility of the expert affidavit.

Majority opinion, ¶ 18.

{¶ 25} The majority then concludes, "Without the expert affidavit, Bliss failed to offer any evidence that the access window was an 'equipment safety guard' under R.C. 2745.01(C). Bliss had the burden of production, and he simply failed to produce any evidence to support his assertions." Majority opinion at ¶ 19.

{¶ 26} When reviewing whether a trial court properly granted a summary-judgment motion, however, we review the record de novo. *Piazza v. Cuyahoga Cty.*, 157 Ohio St.3d 497, 2019-Ohio-2499, 138 N.E.3d 1108, ¶ 14, citing *Vacha v. N. Ridgeville*, 136 Ohio St.3d 199, 2013-Ohio-3020, 992 N.E.2d 1126, ¶ 19, citing *Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, ¶ 8. Moreover, Bliss raised this exact issue in his second proposition of law in his jurisdictional appeal to this court ("It is not an abuse of discretion for a trial court to admit an expert affidavit on summary judgment when the affidavit is based on evidence, set forth facts, and is instructive to the court"), but a majority of this court declined to accept Bliss's second proposition of law. *See* 164 Ohio St.3d 1440, 2021-Ohio-3233, 173 N.E.3d 1228. It is one thing for this court to summarily dismiss an appellant's argument for failure to raise a significant issue on appeal, but here, Bliss raised the issue in his second proposition of law. A majority of this court declined to accept that proposition, and now a majority of this court uses the absence of argument on that issue to rule against Bliss. In other words, Bliss was prevented from having this court decide key issues regarding his expert's affidavit, and now this court uses the absence of expert evidence against him.

*Trial-court proceedings*

{¶ 27} Johns Manville moved for summary judgment on the ground that there was insufficient evidence to establish it acted with intent to injure another under R.C. 2745.01, which states:

(A) In an action brought against an employer by an employee, or by the dependent survivors of a deceased employee, for damages resulting from an intentional tort committed by the employer during the course of employment, the employer shall not be liable unless the plaintiff proves that the employer committed the tortious act with the intent to injure another or with the belief that the injury was substantially certain to occur.

(B) As used in this section, "substantially certain" means that an employer acts with deliberate intent to cause an employee to suffer an injury, a disease, a condition, or death.

(C) Deliberate removal by an employee of an equipment safety guard or deliberate misrepresentation of a toxic or hazardous substance creates a rebuttable presumption that the removal or misrepresentation was committed with intent to injure another if an injury or an occupational disease or condition occurs as a direct result.

{¶ 28} In response, Bliss opposed Johns Manville's motion, arguing that Johns Manville violated R.C. 2745.01(A) and (C). Bliss supported his opposition with the affidavit of his expert, Gerald Rennell, a "machine safety guarding expert." Johns Manville replied that there were "no facts before the court supporting [Bliss's] arguments" and that it was "entitled to summary judgment as a matter of law."

{¶ 29} Johns Manville also moved to strike Rennell's affidavit. Rennell stated in his affidavit:

6. Johns Manville knew the guard on the base fiber feeder was defective because it was not secured in position with bolts

10

requiring hand tools to open the guard. Having an unsecured and defective guard is the same as removing a guard.

* * *

8. Johns Manville knew because of a previous incident that the guard on the base fiber feeder should be secured with bolts requiring hand tools to open the guard.

9. Johns Manville knew because of a previous injury that cleaning the moving base fiber feeder would result in injury.

10. Johns Manville knew according to Mr. Bliss's testimony that employees were cleaning the base fiber feeder while it was under power.

11. Johns Manville showed a total and complete disregard for the safety of its employees by failing to secure guards in place with bolts.

* * *

13. It is my opinion that Johns Manville deliberately removed a safety guard when its personnel failed to bolt the guard in position (even though the guard had previously been bolted following an identical incident) and allowed the unguarded machine to be operated in violation of OSHA 1910.212(a)(2). In other words, another incident was inevitable. While it is impossible, at this juncture, to determine the state of mind of any Johns Manville supervisor or safety personnel, what is clear is that the decision to remove this equipment guard in this instance came as a result of deliberate, intentional, and volitional actions. These same people, with specific knowledge of an identical incident to one of its employees, took these actions and left Mr. Bliss to suffer the inevitable consequences.

**{¶ 30}** The trial court denied Johns Manville's motion to strike Rennell's affidavit and Johns Manville's summary-judgment motion. The trial court found that based on Rennell's affidavit, Johns Manville failed to show that there were no genuine issues of material fact. The trial court did not, however, conclude as a matter of law that the access window and/or modified lift apron was an "equipment safety guard."

**{¶ 31}** As the majority sets forth, the case proceeded to a jury trial; the jury found in favor of Bliss and awarded him $451,000 in damages.

*Sixth District's opinion*

**{¶ 32}** Johns Mansville appealed to the Sixth District, which reversed the trial court's judgment. 2021-Ohio-1673, 172 N.E.3d 1146, at ¶ 1. First, it found that the trial court erred when it denied Johns Manville's motion to strike Rennell's affidavit. *Id*. at ¶ 22. The Sixth District concluded that Rennell's affidavit "specifically opined that the employer deliberately removed a safety guard." *Id*. The Sixth District further explained:

> Rennell stated "what is clear is that the decision to remove this equipment guard in this instance came as a result of deliberate, intentional, and volitional actions." With this affidavit, [Bliss] attempted to establish that [Johns Manville] deliberately removed an equipment safety guard. However, the interpretation and meaning of these phrases from R.C. 2745.01 is a question of law for the court to determine, not a question of fact for which expert testimony would be permissible. *Fickle* [*v. Conversion Technologies Internatl., Inc*., 6th Dist. Williams No. WM-10-016, 2011-Ohio-2960,] ¶ 25. Further, Civ.R. 56 and the Rules of Evidence regarding expert opinion testimony require affidavits to

set forth facts and not legal conclusions. *Warren* [*v. Libbey Glass, Inc*.,] 6th Dist. Lucas No. L-09-1040, 2009-Ohio-6686, at ¶ 15, citing *Youssef v. Parr, Inc*., 69 Ohio App.3d 679, 689, 591 N.E.2d 762 (8th Dist.1990). Thus, the expert affidavit, comprised of legal conclusions regarding statutory terms, is impermissible, and the trial court abused its discretion in denying appellant's motion to strike the expert affidavit.

2021-Ohio-1673 at ¶ 22.

{¶ 33} Next, the Sixth District concluded that without Rennell's affidavit, Bliss "presented no evidence that the modified lift apron is an equipment safety guard." *Id*. at ¶ 39. The appellate court then found that "the modified lift apron does not constitute an equipment safety guard based upon our own interpretation of the applicable statute." *Id.* The court further concluded that Bliss presented no evidence that Johns Manville intended to injure him, explaining, "The fact that [Johns Manville] failed to bolt down the spare lift apron may constitute some level of negligence, but it is equally clear that negligent conduct does not support a claim based on an intentional tort." *Id*. at ¶ 44. The Sixth District vacated the trial court's judgment and entered judgment in favor of Johns Manville. *Id*. at ¶ 45.

*Law and analysis*

{¶ 34} In *Hewitt v. L.E. Myers Co*., 134 Ohio St.3d 199, 2012-Ohio-5317, 981 N.E.2d 795, ¶ 17, this court explained that R.C. 2745.01(C) does not define "equipment safety guard." We explained that "the interpretation of undefined terms within a statute is a question of law for the court." *Id*. at ¶ 31, citing *Akron Centre Plaza, L.L.C. v. Summit Cty. Bd. of Revision*, 128 Ohio St.3d 145, 2010-Ohio-5035, 942 N.E.2d 1054. In defining "equipment safety guard" in that case, we looked to the plain and ordinary meaning of the terms. *Id.* at ¶ 17. We stated:

The word "guard," a noun, is modified by the adjectives "equipment" and "safety." Reading the words in context and according to the rules of grammar as we must, R.C. 1.42, we determine that the phrase "an equipment safety guard" means a protective device on an implement or apparatus to make it safe and to prevent injury or loss.

*Id*. at ¶ 18.

{¶ 35} In *Hewitt*, we discussed another Sixth District case and other appellate-court decisions that have defined equipment safety guard:

The Sixth District Court of Appeals so interpreted the phrase [equipment safety guard] in *Fickle*, 2011-Ohio-2960, modified by *Beyer v. Rieter Automotive N. Am., Inc*., 6th Dist. No. L-11-1110, 2012-Ohio-2807, 973 N.E.2d 318. In [*Fickle*], the plaintiff's hand and arm were caught in a roller on an adhesive-coating machine. She alleged that her employer had failed to train her to use a jog switch that would stop the roller when not depressed and also had disconnected an emergency stop cable. The *Fickle* court concluded that these devices were not "equipment safety guards," because they did not prevent the plaintiff's hands from being exposed to the dangerous point of operation of the machinery she had been operating. *Id*. at ¶ 42. Thus, the court concluded that these facts did not demonstrate a "[d]eliberate removal by an employer of an equipment safety guard" to establish a presumption of intent under R.C. 2745.01(C).

*Fickle* rejected the argument that "equipment safety guard" included " 'any device designed to prevent injury or to reduce the

14

seriousness of injury.' " *Id*. at ¶ 39. "The General Assembly did not make the presumption applicable upon the deliberate removal of any safety-related device, but only of an equipment safety guard, and we may not add words to an unambiguous statute under the guise of interpretation." Id. at ¶ 42. Thus, *Fickle* defined "equipment safety guard" as a "device that is designed to shield the operator from exposure to or injury by a dangerous aspect of the equipment." *Id*. at ¶ 43.

Other appellate districts in this state have similarly construed this phrase. *See Beary v. Larry Murphy Dump Truck Serv., Inc*., 5th Dist. No. 2011-CA-00048, 2011-Ohio-4977, ¶ 21 ("equipment safety guard" commonly means a device designed to shield the operator of equipment from exposure to injury by a dangerous aspect of the equipment; a vehicle's backup alarm does not guard anything); *Barton v. G.E. Baker Constr*., 9th Dist. No. 10CA009929, 2011-Ohio-5704 (a trench box to secure the sides of a trench from collapse is not "an equipment safety guard" because it is not a piece of equipment designed to protect an operator of equipment); *Roberts v. RMB Ents., Inc*., 197 Ohio App.3d 435, 2011-Ohio-6223, 967 N.E.2d 1263, ¶ 24 (12th Dist.) (a tire bead and bead taper, alleged safety features of a wheel-assembly unit, do not constitute "equipment safety guards," because they are not devices designed to shield the operator from exposure to or injury by a dangerous aspect of the equipment).

*Hewitt*, 134 Ohio St.3d 199, 2012-Ohio-5317, 981 N.E.2d 795, at ¶ 19-21.

{¶ 36} We disagreed with the Sixth District's conclusion in *Beyer*, 6th Dist. No. L-11-1110, 2012-Ohio-2807, 973 N.E.2d 318, that "even 'personal protection

equipment' such as a face mask at a manufacturing plant was 'an equipment safety guard' because the masks were used to prevent the employee's exposure to toxic dust." *Hewitt* at ¶ 23, quoting *Beyer* at ¶ 12-13. We specifically rejected the contention that the phrase should apply broadly "to any safety-related item that may serve as a barrier between the employee and danger." (Emphasis sic.) *Id*. at ¶ 22, 24. We stated, "To construe 'equipment safety guard' to include any generic safety-related item ignores not only the meaning of the words used but also the General Assembly's intent to restrict liability for intentional torts. As the Ninth District observed in *Barton v. G.E. Baker Constr*., [9th Dist. Lorain No. 10CA009929,] 2011-Ohio-5704, ¶ 11, '[f]rom these common dictionary definitions, it becomes apparent that not all workplace safety devices are "equipment safety guards" as that term is used in Section 2745.01.' " *Hewitt* at ¶ 24.

**{¶ 37}** We held in *Hewitt*, "As used in R.C. 2745.01(C), 'equipment safety guard' means a device designed to shield the operator from exposure to or injury by a dangerous aspect of the equipment, and the 'deliberate removal' of an equipment safety guard occurs when an employer makes a deliberate decision to lift, push aside, take off, or otherwise eliminate that guard." *Id*. at syllabus.

**{¶ 38}** In this case, the Sixth District concluded that the trial court should have struck Rennell's affidavit because he "specifically opined that the employer deliberately removed a safety guard" and "the interpretation and meaning of these phrases from R.C. 2745.01 is a question of law for the court to determine, not a question of fact for which expert testimony would be permissible." 2021-Ohio-1673, 172 N.E.3d 1146, at ¶ 22.

**{¶ 39}** "Expert affidavits offered in * * * opposition to summary judgment must comply with Civ.R. 56(E) as well as the evidence rules governing expert opinion testimony, Evid.R. 702-705." *Frederick v. Vinton Cty. Bd. of Edn*., 4th Dist. Vinton No. 03CA579, 2004-Ohio-550, ¶ 23. Thus, "the affidavit must set forth the * * * facts or data [the expert] considered in rendering his opinion." *Id*.

"It is improper for an expert's affidavit to set forth conclusory statements and legal conclusions *without sufficient supporting facts*." (Emphasis added.) *Id*. at ¶ 28.

{¶ 40} Civ.R. 56(E) provides:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated in the affidavit.

{¶ 41} Regarding the admissibility of expert testimony, Evid.R. 702 provides that "[a] witness may testify as an expert if," among other requirements, the expert's "testimony is based on reliable scientific, technical, or other specialized information" and the expert "is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony." The facts or data upon which the expert bases an opinion must be those "perceived by [him] or admitted in evidence at the hearing," as provided by Evid.R. 703. Under Evid.R. 704, an expert's opinion "is not objectionable solely because it embraces an ultimate issue to be decided by the trier of fact," if the expert's opinion is otherwise admissible.

{¶ 42} I would conclude that the Sixth District erred when it determined that the trial court should have struck Rennell's affidavit. Bliss submitted Rennell's affidavit in response to Johns Manville's summary-judgment motion. In that response, it was Bliss's burden to put forth evidence to establish that Johns Manville was not entitled to judgment as a matter of law because genuine issues of material fact remained. Bliss met his burden with Rennell's affidavit. Rennell simply set forth his expert opinion based on facts that he observed from reviewing evidence that was in the record.

**{¶ 43}** Even without Rennell's affidavit, Bliss presented evidence that the guard was not bolted in place at the time of Bliss's injury. Bliss testified in his deposition that the bolts had been removed and were sitting on top of the machine and that he told this fact to his supervisor, Paul Culbertson. Culbertson admitted in his affidavit that in 2013, there was a prior incident with another employee who sustained a hand injury after opening the unbolted access window on the lift apron. Culbertson stated that after the 2013 incident, Johns Manville "bolted down the access windows" on the lift aprons of the Base Fiber Feeder. Culbertson further stated that his investigation showed that the access window on the machine on which Bliss was injured "was not bolted down."

**{¶ 44}** Thus, based on evidence other than Rennell's affidavit—i.e., Bliss's own deposition testimony and Culbertson's affidavit—Bliss met his burden of establishing that a question of fact remained as to whether Johns Manville deliberately removed the equipment safety guard on the lift apron.

**{¶ 45}** Accordingly, I would conclude that the Sixth District erred when it reversed the trial court's judgment denying summary judgment to Johns Manville. The Sixth District determined, as a matter of law, that the modified lift apron was not an "equipment safety guard" and that therefore the case should never have gone to the jury. 2021-Ohio-1673, 172 N.E.3d 1146, at ¶ 37-40, 45. The Sixth District stated that "a lift apron designed to see inside of and allow access to a machine does not become an object designed to shield the employee simply because bolts were added to it." *Id*. at ¶ 37. But Bliss presented evidence, when construed in his favor, establishing that a question of fact remained as to whether Johns Manville deliberately removed the bolts on the access window of the lift apron.

**{¶ 46}** Lastly, as Bliss points out, in addition to receiving a jury verdict under R.C. 2745.01(C), he also obtained a jury verdict under R.C. 2745.01(A), which provides for recovery when a tortious act is committed "with the intent to injure another or with the belief that the injury was substantially certain to occur."

The Sixth District held that Bliss did not establish that there was a question of fact regarding this subsection either and that therefore, this claim should not have gone to the jury. 2021-Ohio-1673 at ¶ 45. I disagree. Bliss's evidence established that a question of fact remained regarding whether Johns Manville knew that another injury was substantially certain to occur.

{¶ 47} For the foregoing reasons, I dissent and would reverse the judgment of the Sixth District Court of Appeals. Following a favorable verdict based on a full record, de novo review of a trial court's decision to deny summary judgment cannot include a reviewing court weighing the evidence against the nonmoving party, ignoring pertinent evidence, and misapplying the law.

BRUNNER, J., concurs in the foregoing opinion.

––––––––––––––––––

Gallon, Takacs & Boissoneault Co., L.P.A., Kevin J. Boissoneault, and Jonathan M. Ashton, for appellant.

Bugbee & Conkle, L.L.P., Mark S. Barnes, and Gregory B. Denny, for appellee.

Murray & Murray Co., L.P.A., and Margaret M. Murray, urging reversal for amicus curiae Ohio Association for Justice.

Garvin & Hickey, L.L.C., Preston J. Garvin, and Michael J. Hickey, urging affirmance for amici curiae Ohio Manufacturers' Association and National Federation of Independent Businesses/Ohio.

––––––––––––––––––